Anthony TUCKER, Petitioner,

v.

Paul J. RENICO, Respondent.

No. 99–10236–BC.

United States District Court,
E.D. Michigan,
Northern Division.

April 27, 2004.

Anthony Tucker, St. Louis, MI, Pro se.

Janet Van Cleve, Lansing, MI, for Respondent.

Kenneth R. Sasse, Federal Defender Office, Flint, MI, for Petitioner/Respondent.

***OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION, OVERRULING OBJECTIONS, AND CONDITIONALLY GRANTING PETITION FOR WRIT OF HABEAS CORPUS***

LAWSON, District Judge.

This matter is now before the Court on the objections filed by the warden, respondent Paul Renico, to a report and recommendation issued by Magistrate Judge Charles E. Binder recommending that a writ of habeas corpus be conditionally granted. After conducting a *de novo* review of the record and the parties' submissions in light of the objections filed, the Court concludes that the magistrate judge was correct in concluding that the petitioner demonstrated cause and prejudice sufficiently to excuse his state court procedural default on the claim that his trial counsel was constitutionally ineffective, and that state trial counsel's deficient performance

resulted in prejudice to the petitioner. The Court, therefore, will overrule the respondent's objections, adopt the magistrate judge's report and recommendation, and issue a conditional writ of habeas corpus.

## I.

In 1993, the petitioner, Anthony Tucker, was charged in the Detroit, Michigan Recorder's Court with three counts of first-degree criminal sexual conduct and one count of breaking and entering a dwelling with intent to commit criminal sexual conduct. The charges were based on the complaint of Veronica Amos who testified that on August 6 of that year, the petitioner forced his way into her home as she was returning there with her two children and compelled her against her will to engage in various sex acts with him.

A jury trial was conducted on May 31 and June 1, 1994, during which the petitioner was represented by court-appointed attorney John Marsh. The magistrate judge has summarized the testimony in detail, and since neither party has objected to that portion of the report the Court will adopt it. In essence, at the trial Ms. Amos reluctantly acknowledged that she had known the petitioner previously and attempted to minimize the extent of their relationship by claiming that it was only "spiritual" in nature. She stated that she had allowed the petitioner to sleep in her house in 1985 and for a one-week period in 1990 but denied that he actually stayed there for any significant period of time. Ms. Amos agreed that the petitioner used her address as his but maintained that occurred in 1985. She admitted on cross-examination that the petitioner was the father of her two children but insisted that her two pregnancies resulted from his prior sexual assaults. Ms. Amos also acknowledged that she once was held out as "Veronica Tucker," but she explained that it was the petitioner who so identified her on insurance forms at his place of work.

The petitioner did not testify or present any evidence on his behalf. The state agreed to dismiss portions of the aggravating elements of the criminal sexual conduct counts so that when the case went to the jury, the sole aggravating factor that elevated the crimes to the first degree was that the acts of sexual penetration were committed during the course of another felony, that being breaking and entering. The jury deliberated for several hours over two days, during which time it sent notes asking for additional instructions on some of the terms used by the court in its jury charge. On the afternoon of the second day of deliberations, the jury returned its verdict finding the petitioner not guilty of two counts of first-degree criminal sexual conduct, guilty of a third count of first-degree criminal sexual conduct, and guilty of breaking and entering.

On June 20, 1994, the state court sentenced the petitioner to a prison term of 120 to 181 months on the criminal sexual conduct count. It does not appear from the sentencing transcript that a separate sentence was imposed on the breaking and entering count. The petitioner pursued a direct appeal with the assistance of another court-appointed attorney, Daniel Rust. The petitioner claims that he asked Mr. Rust to raise the claim that his right under the Sixth Amendment was violated because trial counsel was ineffective, but the only issue presented on direct appeal was that the evidence was insufficient to support the convictions. The court of appeals affirmed the convictions and the state supreme court denied the petitioner's application for leave to appeal.

The petitioner then filed a *pro se* post-conviction motion for relief from judgment on August 23, 1996 in which he raised for the first time the claims of ineffective as-

sistance of counsel. The petitioner alleged that his trial counsel, John Marsh

> failed to substantially investigate all avenues of defense, failed to submit any defense whatsoever, failed to argue the defendant's diminished mental capacity, failed to voir dire the jury prior to trial, failed to challenge the fact that the jury was not drawn from a fair cross section of the community in that there were ten women and three men, failed to call key witnesses, and failed to properly cross-examine prosecutor [sic] witnesses, and failed to object that the lesser included offenses of Criminal Sexual Conduct were not included in the jury instructions.

Mot. for Relief from Judgment ¶ 14. With respect to his counsel on direct appeal, the petitioner alleged that he

> previously requested Daniel Rust, Defendant's Appealant [sic] Counsel, to raise the issue [of ineffective assistance of counsel], but Mr. Rust was reluctant to do so and in fact did not.

*Id.* at ¶ 16. The petitioner repeated those allegations against his lawyers in his supporting brief. *See* Br. in Sup. of Mot. for Relief from Judgment at 7–9. The state trial court denied the motion without conducting a hearing or providing an explanation. The petitioner appealed that ruling to both the Michigan Court of Appeals and the Michigan Supreme Court, asserting each time that his trial counsel was ineffective and that his appellate attorney's ineffectiveness was the cause for his failure to assert that Sixth Amendment claim on direct appeal. Both state appellate courts denied the petitioner's applications due to the "fail[ure] to meet the burden of establishing entitlement to relief under MCR [Mich. Ct. R.] 6.508(D)." *People v. Tucker,* No. 200083 (Mich.App. Aug. 12, 1997); *People v. Tucker,* 458 Mich. 859, 587 N.W.2d 635 (1998).

The petitioner filed his *pro se* petition for the writ of habeas corpus on June 1, 1999 in which he raised two substantive issues: (1) he was denied his right under the Sixth Amendment to the effective assistance of counsel; and (2) he was denied his rights under the Due Process Clause because of the state's failure to produce *res gestae* witnesses, suppression of evidence favorable to him, and use of perjured testimony. The respondent answered the petition raising several procedural defenses. The matter was referred to Magistrate Judge Binder by this Court's predecessor, the Honorable Victoria A. Roberts, and counsel was appointed. Magistrate Judge Binder conducted an evidentiary hearing in two sessions, and he has detailed the testimony and evidence received in his report. The parties filed post-hearing briefs, and on August 23, 2002 the magistrate judge filed his report in which he recommended that the writ issue. The respondent filed timely objections to portions of the report and recommendation.

## II.

The magistrate judge made several rulings in which he addressed both the respondent's procedural defenses and the petitioner's substantive claims. The petitioner did not file any objections to the recommendation and report, and the respondent objected to only two aspects of it. Since the failure to object to a magistrate judge's ruling obviates the need for a *de novo* review by the district court, *see* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn,* 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), and bars any subsequent appeal of that ruling, *see Smith v. Detroit Federation of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.1987), it is important to set forth in some detail the issues addressed by the magistrate judge and his specific holding on each discrete issue.

The Court will then address the merits of those issues that properly have been preserved by timely objection under 28 U.S.C. § 636(b)(1)(C).

The magistrate judge held:

A. The petitioner did not present his claim based on the Due Process Clause to the state court, but he would now be barred procedurally from doing so, so the exhaustion requirement would not prevent this Court from entertaining the claim.

B. The procedural bar as to the due process issue is not overcome, however, by a sufficient showing of cause for failing to raise the issue in state court, so review of the federal issue is precluded.

C. The petitioner's claim under the Sixth Amendment—that trial counsel was constitutionally ineffective—was decided by the state court solely on the basis of the state's procedural rule set forth in Mich. Ct. Rule 6.508(D)(3), which prevents consideration in a postconviction proceeding of an issue that could have been presented on direct appeal.

D. The petitioner demonstrated "cause" for this procedural default because he established that appellate counsel was constitutionally ineffective.

 1. The ineffective-assistance-of-appellate-counsel claim was exhausted because it was "fairly presented" to the state court for one full round of the state's established appellate review process.

 2. Appellate counsel's failure to raise the ineffective-assistance-of-trial-counsel claim on direct appeal constituted deficient performance under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

 3. Appellate counsel's deficient performance resulted in "prejudice" to the petitioner as that term has been

construed by the Supreme Court in *Strickland, id.* at 694, 104 S.Ct. 2052.

E. The petitioner's state trial counsel's performance was constitutionally deficient because he failed to present evidence that would have undermined significantly the credibility of the state's sole witness against the petitioner, tended to negate the absence of consent on the criminal sexual conduct charge, and identified him with the residence he was alleged to have broken and entered.

F. Trial counsel's deficient performance resulted in "prejudice" to the petitioner within the meaning of *Strickland.*

As noted above, the petitioner did not file any objections to the report and recommendation. The respondent objected only to the rulings noted above in paragraphs (D)(1) and (F). This Court, therefore, will adopt the holdings of the magistrate judge in all other respects, and will proceed to a *de novo* review of the question of whether the petitioner "fairly presented" his claim of ineffective assistance of appellate counsel to the state courts, and whether trial counsel's deficient performance resulted in prejudice to the petitioner.

### III.

The state courts never addressed either of these issues. The trial court's order denying relief contained no reasons, and the state appellate courts merely denied leave to appeal in a form order. In a case where there is no reasoned state court decision to evaluate, "federal courts are obligated to conduct an independent review of the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented. That independent review, however, is not a

full, de novo review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA." *Harris v. Stovall,* 212 F.3d 940, 943 (6th Cir.2000) (citations omitted), *cert. denied,* 532 U.S. 947, 121 S.Ct. 1415, 149 L.Ed.2d 356 (2001).

The petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (AEDPA). This Act "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising the question of ineffective assistance of counsel. *See Wiggins v. Smith,* 539 U.S. 510, 123 S.Ct. 2527, 2534, 156 L.Ed.2d 471 (2003). The AEDPA applies to all habeas petitions filed after the effective date of the Act, April 24, 1996. *Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Because the petitioner's application was filed after that date, the provisions of the AEDPA, including the amended standard of review, apply to this case.

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.... A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor,* 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

The Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409, 120 S.Ct. 1495. The Court defined "unreasonable application" as follows:

[A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable....

[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law.... Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410–11, 120 S.Ct. 1495; *see also McAdoo v. Elo,* 346 F.3d 159, 165–66 (6th

Cir.2003); *Rockwell v. Yukins,* 341 F.3d 507, 512 (6th Cir.2003) (en banc); *Lewis v. Wilkinson,* 307 F.3d 413, 418 (6th Cir. 2002).

## A.

As noted above, the magistrate judge determined that the petitioner's ineffective assistance of trial counsel claim was decided by the state courts solely on the basis of the state's procedural rule that barred consideration of claims in post-appeal proceedings that could have been raised on direct appeal. That rule is set forth in Mich. Ct. Rule 6.508(D)(3). It is well accepted that when a state court relies on a firmly established and regularly applied state procedural rule to avoid substantively addressing a prisoner's federal claim, and the petitioner in fact has failed to comply with that state procedural rule, the state court's decision is based on an adequate and independent state law ground. *See Williams v. Coyle,* 260 F.3d 684, 693 (6th Cir.2001), *cert. denied,* 536 U.S. 947, 122 S.Ct. 2635, 153 L.Ed.2d 816 (2002); *see also Warner v. United States,* 975 F.2d 1207, 1213–14 (6th Cir.1992).

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

In this case, the petitioner alleges and the magistrate judge found that the deficient performance of the petitioner's court-appointed appellate attorney was "cause" for not raising his ineffective-assistance-of-trial-counsel claim on direct appeal. Ineffective assistance of appellate counsel can constitute "cause" for a procedural default. *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Thus, "[i]f [the petitioner] can show that he received ineffective assistance of appellate counsel that rose to the level of a violation of his Sixth Amendment rights, it would excuse his procedural default." *Martin v. Mitchell,* 280 F.3d 594, 605 (6th Cir.), *cert. denied,* 537 U.S. 1004, 123 S.Ct. 515, 154 L.Ed.2d 401 (2002), *and cert. denied,* 539 U.S. 938, 123 S.Ct. 2601, 156 L.Ed.2d 624 (2003). "Not just any deficiency in counsel's performance will [excuse a procedural default], however; the assistance must have been so ineffective as to violate the Federal Constitution." *Edwards v. Carpenter,* 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000). Moreover, in order to assert on habeas that the ineffective assistance of appellate counsel was the "cause" for a procedural default in state court, that claim itself "must be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Id.* at 452, 120 S.Ct. 1587 (quoting *Carrier,* 477 U.S. at 489, 106 S.Ct. 2639; internal quote marks omitted). The claim also must be presented in the manner prescribed by the state's procedural rules. *Ibid.*

The respondent here takes issue with the magistrate judge's conclusion that the petitioner presented the ineffective-assistance-of-appellate-counsel claim in his motion for relief from judgment. He says that the main focus of that motion was on the deficient performance of his *trial* counsel, and the magistrate judge should not have generously read the petitioner's state court pleadings, since the mandate to liberally construe *pro se* pleadings set forth in *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), applies only to federal pleadings, citing *Jones v. Jerrison,* 20 F.3d 849 (8th Cir.1994). The respon-

dent argues, therefore, that the petitioner failed to exhaust his Sixth Amendment claim directed toward appellate counsel's performance.

 The doctrine of exhaustion of state remedies requires state prisoners to "fairly present" their claims as federal constitutional issues in the state courts before raising those claims in a federal habeas corpus petition. *See* 28 U.S.C. § 2254(b)(1)(A) and (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir.2000), *cert. denied*, 532 U.S. 958, 121 S.Ct. 1487, 149 L.Ed.2d 374 (2001). The exhaustion requirement is satisfied if a prisoner invokes one complete round of the state's established appellate review process, including a petition for discretionary review to a state supreme court. *O'Sullivan*, 526 U.S. at 845, 119 S.Ct. 1728. A claim is "fairly presented" to the state courts if it "(1) relie[s] upon federal cases employing constitutional analysis; (2) relie[s] upon state cases employing federal constitutional analysis; (3) phras[es] the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) allege[s] facts well within the mainstream of constitutional law." *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir.2000).

 There is no serious argument presented here that the petitioner should have raised a claim of ineffective assistance of appellate counsel on direct appeal. The petitioner's post-conviction motion filed under Mich. Ct. R. 6.500 was the first practical opportunity to address the issue in state court. That motion, filed on August 23, 1996, consisted of sixteen numbered paragraphs plus a supporting brief. The first twelve paragraphs set forth the procedural history of the case. In paragraph thirteen, the petitioner contended that attorney John Marsh failed to provided effective assistance at trial and sentencing. Paragraph fourteen listed the tactical failures allegedly visited upon the petitioner by Mr. Marsh. Paragraph fifteen set forth the petitioner's view of the duties of counsel to a criminal defendant under the Sixth Amendment. Paragraph sixteen stated in its entirety:

> That the defendant has not previously raised these issues in any court because the defendant was unable to review trial and sentencing transcripts and see the errors, as well as his lack of expertise in legal matters. Defendant previously requested Daniel Rust, Defendant's Appealant [sic] Counsel, to raise the issue, but Mr. Rust was reluctant to do so and in fact did not.

Mot. for Relief from Judgment ¶ 16. The petitioner elaborated on these issues in his supporting brief:

> The defendant's attorney, John Marsh, failed to adequately investigate all lines of defense in preparation for trial. With the exception of a few brief moments prior to court appearances, counsel made no attempt to contact him with regard to preparing a defense. Defendant made numerous attempts to call him, but counsel refused to accept any calls from him. Defendant additionally attempted to write counsel, but received no response. Defendant additionally attempted to contact the court with regard to counsel's unwillingness to contact him in preparation of defense, but received no response from the court. Defendant finally raised the issue of ineffective assistance of counsel to his appealant [sic] attorney, Daniel Rust, but Mr. Rust was reluctant to pursue the issue and in fact did not. "Representation of a criminal defendant entails certain basic duties. Counsel's function is to assist the defendant, and hence counsel owes the client a duty of loyalty. From counsel's func-

tion as assistance to the defendant derive the overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." *Strickland, supra* at 688, 104 S.Ct. 2052. See also *Powell v. Alabama,* 287 U.S. at 68–69, 53 S.Ct. 55, 77 L.Ed. 158, 84 ALR 527. The defendant was prejudiced by counsel's failure to adequately defendant him.

Br. in Sup. of Mot. for Relief from Judgment at 7–8.

■ The Court agrees with the magistrate judge that the petitioner fairly presented to the state courts the issue of the constitutional adequacy of his appellate counsel's performance. The petitioner identified the constitutional provision at issue, he cited Supreme Court cases that explicated the constitutional right involved, and he alleged facts within the constitutional mainstream that arguably applied to the legal foundation he set up in his motion and brief. It is true that the petitioner's main focus was on the performance of his trial counsel. However, a fair reading of his motion and brief leads to the conclusion that his excuse for not raising these issues on direct appeal was the deficient performance of his appellate attorney—performance that must measured by the same standards that apply to trial counsel, which the petitioner set forth in his motion papers. It was not improper for the magistrate judge to liberally construe the petitioner's state court motion papers. In *Caver v. Straub,* 349 F.3d 340 (6th Cir. 2003), the Sixth Circuit liberally construed a petitioner's state court papers and similarly upheld his assertion of ineffective assistance of his state appellate attorney as cause for not raising the claim on direct appeal that his trial counsel's performance denied him his rights under the Sixth Amendment. See *id.* at 347 (observing that, "[g]iven the less stringent standards and active interpretation that are afforded to the filings of pro se litigants ... these aspects of Caver's application [for leave to appeal presented to the state courts] support a finding that Caver 'fairly presented' the trial counsel ineffectiveness claim").

The state courts had a fair opportunity to address the petitioner's federal ineffective-assistance-of-appellate-counsel claim, and the Court finds that the petitioner, therefore, exhausted his state court remedies as to that claim. The claim was not procedurally defaulted. The respondent's objection to this aspect of the magistrate judge's report is overruled.

### B.

■ The respondent's other objection to the magistrate judge's report and recommendation is that the finding that the petitioner's state trial counsel's deficient performance caused prejudice was incorrect. The respondent argues that all of the facts that trial counsel failed to present through witnesses and exhibits then available were actually before the jury. For instance, the respondent observes that Veronica Amos testified that she and the petitioner had known each other for nine years, that he never moved in with her but did stay at her house for a while, and that she asked him to leave when she saw him using illegal drugs. Ms. Amos also testified that the petitioner moved in briefly in 1990 but not after that, he put her name on his insurance because of her second pregnancy, and the petitioner was in the delivery room during the birth of her two sons. The respondent also points to trial evidence that the petitioner had his mail delivered to Amos' address, he attended Lamaze classes with Ms. Amos, and he came over

to her house occasionally to see the baby. The respondent also refers to the final argument of state trial counsel, although it is not clear how that argument would serve as a substitute for evidence that could have been presented but was not due to the attorney's deficient performance.

The evidence cited by the respondent actually establishes a factual inconsistency with the position of the petitioner. The petitioner contends that he in fact had lived with Ms. Amos at 9037 Auburn, Detroit, Michigan—the site of the alleged rape and breaking and entering—from 1985 through the date of his arrest, and that he communicated that fact to his trial attorney. Ms. Amos' testimony plainly attempted to distance herself from any such relationship with the petitioner, even to the point of denying that her association with him was anything other than "spiritual," and contending that her two children were conceived as the result of the petitioner's prior sexual assaults. The magistrate judge documented evidence received at the evidentiary hearing in this case, which was available at the time of the state court trial, that tends to prove that the petitioner and Ms. Amos had a long-term, common-law, spousal relationship; she held herself out as his wife; and the petitioner maintained a residence at 9037 Auburn in Detroit. The evidence also tends to show that the petitioner maintained a relationship with the two children he and Ms. Amos had in common and that Amos had a cordial relationship with the petitioner's mother and brother over the years.

The respondent contends that although this evidence may undermine the credibility of Veronica Amos, it likely would have been inadmissible at trial because it constitutes extrinsic evidence on a collateral matter that Michigan courts do not allow for impeachment, citing *People v. Teague,* 411 Mich. 562, 309 N.W.2d 530 (1981). That argument, which articulates a well-established limitation on the practice of impeachment by contradiction, has no application to the facts presented here. When an impeaching fact is relevant to the issues of historical merit in the case, the fact is not collateral and it is not subject to the limitation. The contours of the prior relationship between Veronica Amos and the petitioner were relevant because of the tendency to negate the non-consensual nature of their contact on August 6, 1993. The presence or absence of consent is a material fact under Michigan law in a criminal sexual conduct prosecution. *See People v. Oliphant,* 399 Mich. 472, 250 N.W.2d 443 (1976). A prior relationship also could establish "possible biases, prejudices, or ulterior motives" that Amos had to testify against the petitioner; bias is not collateral. *See United States v. Buchanan,* 891 F.2d 1436, 1443–44 (10th Cir.1989). Finally, the evidence also tended to prove that the petitioner lived at 9037 Auburn and therefore had some colorable right to enter the premises. That issue was material since the petitioner was charged in a separate count with breaking and entering, and the illegal entry was the sole aggravating factor that elevated the criminal sexual conduct offense to the first degree. The Court is satisfied that the evidence received at the evidentiary hearing in this case was relevant and material, it was available at the time of the petitioner's trial, and it would have been admissible in the state court.

██ Whether trial counsel's constitutionally deficient performance resulted in "prejudice" compelling remedial action by a federal court must be assessed according to the standard established by the Supreme Court in *Strickland. Wiggins,* 123 S.Ct. at 2535 (citing *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052, and observing that "[a]n ineffective assistance claim has two components: A petitioner must show that

counsel's performance was deficient, and that the deficiency prejudiced the defense"). In *Strickland*, the Supreme Court made clear that, to establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052; *see also Campbell v. United States*, 364 F.3d at 735–36 (6th Cir.2004). In assessing prejudice, the court must reassess the incriminating evidence against the totality of available mitigating evidence. *Wiggins*, 123 S.Ct. at 2542; *see Kinnard v. United States*, 313 F.3d 933, 935 (6th Cir.2002) (holding that "[t]o determine if the defendant was prejudiced by his attorney's performance, it is necessary to determine if the proceeding was fundamentally unfair or unreliable; a court should not focus the analysis on the outcome") (citing *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)).

Under *Strickland* then, the petitioner must show a "reasonable probability" that, but for his counsel's unprofessional errors, a different result likely would have occurred. *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. He does not have to establish that his state trial counsel's deficient conduct "more likely than not altered the outcome in the case." *Id.* at 693, 104 S.Ct. 2052. The "reasonable probability" explicated by *Strickland*, rather, is "a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052. "The question, in other words, is whether counsel's errors were serious enough to deprive the petitioner of a proceeding the result of which was 'reliable'—'whether counsel's conduct so undermined the proper functioning of the adversarial system that the trial ... cannot be relied on as having produced a just result.'" *Glenn v.*

*Tate*, 71 F.3d 1204, 1210–11 (6th Cir.1995) (quoting *Strickland*, 466 U.S. at 686, 104 S.Ct. 2052). Put another way, the petitioner "must instead show that there is a reasonable probability that, but for counsel's errors, the factfinder would have had a reasonable doubt about his guilt." *Combs v. Coyle*, 205 F.3d 269, 290 (6th Cir.2000) (citing *Strickland*, 466 U.S. at 695, 104 S.Ct. 2052).

The petitioner has established that there is relevant, material evidence favorable to him that was available at the time of his trial and that should have been considered by the jury. This Court is convinced that if the jury would have considered this evidence, there is a reasonable probability that the petitioner would not have been convicted of breaking and entering or criminal sexual conduct in the first degree. The Court agrees with the magistrate judge's report on this issue, and therefore the respondent's second objection will be overruled.

## IV.

Although the Court need not conduct a *de novo* review of the portions of the magistrate judge's report and recommendation to which no objections were filed, this Court agrees with those recommendations and will adopt them. The two aspects of the report to which objections were filed will be adopted as well and the objections will be overruled. The Court will issue the writ of habeas corpus based on the conditions set forth below.

Accordingly, it is **ORDERED** that the respondent's objections to the report and recommendation of the magistrate judge [dkt # 47] are **OVERRULED**.

It is further **ORDERED** that the report and recommendation of the magistrate judge [dkt # 44] is **ADOPTED**.

It is further it is **ORDERED** that the petition for writ of habeas corpus is **GRANTED.**

It is further **ORDERED** that the respondent shall release the petitioner from custody unless the State brings him to trial again within seventy days, subject to the exclusions from such period allowed by 18 U.S.C. § 3161(h).