# EDWARDS, WARDEN *v.* CARPENTER

No. 98–2060. Argued February 28, 2000—Decided April 25, 2000

SCALIA, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and O'CONNOR, KENNEDY, SOUTER, THOMAS, and GINSBURG, JJ., joined. BREYER, J., filed an opinion concurring in the judgment, in which STEVENS, J., joined, *post*, p. 454.

*Edward B. Foley*, State Solicitor of Ohio, argued the cause for petitioner. With him on the briefs were *Betty D. Montgomery*, Attorney General, *David M. Gormley*, and *Stephen P. Carney*.

*J. Joseph Bodine, Jr.*, argued the cause for respondent. With him on the brief were *David H. Bodiker, Laurence E. Komp*, and *Angela Wilson Miller*.*

---

*A brief of *amici curiae* urging reversal was filed for the State of Texas et al. by *John Cornyn*, Attorney General of Texas, *Andy Taylor*, First Assistant Attorney General, *Shane Phelps*, Deputy Attorney General for Criminal Justice, *Gregory S. Coleman*, Solicitor General, *Idolina G. McCullough*, Assistant Solicitor General, *Michael E. McLachlan*, Solicitor General of Colorado, and *John M. Bailey*, Chief State's Attorney of Connecticut, and by the Attorneys General for their respective States as follows: *Bill Pryor* of Alabama, *Bruce M. Botelho* of Alaska, *Mark Pryor* of Arkansas, *Janet Napolitano* of Arizona, *Bill Lockyer* of California, *Ken*

JUSTICE SCALIA delivered the opinion of the Court.

This case presents the question whether a federal habeas court is barred from considering an ineffective-assistance-of-counsel claim as "cause" for the procedural default of another claim when the ineffective-assistance claim has itself been procedurally defaulted.

I

Respondent was indicted by an Ohio grand jury for aggravated murder and aggravated robbery. He entered a guilty plea while maintaining his innocence—a procedure we held to be constitutional in *North Carolina* v. *Alford,* 400 U. S. 25 (1970)—in exchange for the prosecution's agreement that the guilty plea could be withdrawn if the three-judge panel that accepted it elected, after a mitigation hearing, to impose the death penalty. The panel accepted respondent's plea based on the prosecution's recitation of the evidence supporting the charges and, following a mitigation hearing, sentenced him to life imprisonment with parole eligibility after 30 years on the aggravated-murder count and to a concurrent term of 10 to 25 years on the aggravated-robbery count. On direct appeal respondent, represented by new counsel, assigned only the single error that the evidence offered in mitigation established that he should have been

*Salazar* of Colorado, *M. Jane Brady* of Delaware, *Robert A. Butterworth* of Florida, *Thurbert E. Baker* of Georgia, *James E. Ryan* of Illinois, *Jeffrey A. Modisett* of Indiana, *Thomas J. Miller* of Iowa, *Carla J. Stovall* of Kansas, *Richard P. Ieyoub* of Louisiana, *J. Joseph Curran, Jr.,* of Maryland, *Mike Hatch* of Minnesota, *Mike Moore* of Mississippi, *Jeremiah W. (Jay) Nixon* of Missouri, *Joseph P. Mazurek* of Montana, *Don Stenberg* of Nebraska, *Frankie Sue Del Papa* of Nevada, *Philip T. McLaughlin* of New Hampshire, *John J. Farmer, Jr.,* of New Jersey, *Patricia A. Madrid* of New Mexico, *W. A. Drew Edmondson* of Oklahoma, *Charles M. Condon* of South Carolina, *Mark Barnett* of South Dakota, *Paul G. Summers* of Tennessee, *Jan Graham* of Utah, *William H. Sorrell* of Vermont, *Christine O. Gregoire* of Washington, *Darrell V. McGraw, Jr.,* of West Virginia, and *James E. Doyle* of Wisconsin.

eligible for parole after 20 rather than 30 years. The Ohio Court of Appeals affirmed, and respondent did not appeal to the Ohio Supreme Court.

After unsuccessfully pursuing state postconviction relief *pro se*, respondent, again represented by new counsel, filed an application in the Ohio Court of Appeals to reopen his direct appeal, pursuant to Ohio Rule of Appellate Procedure 26(B),[1] on the ground that his original appellate counsel was constitutionally ineffective in failing to raise on direct appeal a challenge to the sufficiency of the evidence. The appellate court dismissed the application because respondent had failed to show, as the rule required, good cause for filing after the 90-day period allowed.[2] The Ohio Supreme Court, in a one-sentence *per curiam* opinion, affirmed. *State* v. *Carpenter*, 74 Ohio St. 3d 408, 659 N. E. 2d 786 (1996).

On May 3, 1996, respondent filed a petition for writ of habeas corpus in the United States District Court for the Southern District of Ohio, alleging, *inter alia*, that the evidence supporting his plea and sentence was insufficient, in violation of the Fifth and Fourteenth Amendments, and that his appellate counsel was constitutionally ineffective in failing to raise that claim on direct appeal. Concluding that respondent's sufficiency-of-the-evidence claim was procedurally defaulted, the District Court considered next whether the ineffective-assistance-of-counsel claim could

---

[1] Rule 26(B) provides, in relevant part:

"(1) A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel. An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time."

[2] Respondent filed his application to reopen on July 15, 1994. Although Rule 26(B) did not become effective until July 1, 1993, more than two years after respondent's direct appeal was completed, the Court of Appeals considered respondent's time for filing to have begun on the Rule's effective date and to have expired 90 days thereafter.

serve as cause excusing that default. The District Court acknowledged that the ineffective-assistance claim had been dismissed on procedural grounds, but concluded that Rule 26(B)'s inconsistent application by the Ohio courts rendered it inadequate to bar federal habeas review. See *Ford* v. *Georgia,* 498 U. S. 411, 423–424 (1991) (state procedural default is not an "independent and adequate state ground" barring subsequent federal review unless the state rule was "'firmly established and regularly followed'" at the time it was applied). Proceeding to the merits of the ineffective-assistance claim, the District Court concluded that respondent's appellate counsel was constitutionally ineffective under the test established in *Strickland* v. *Washington,* 466 U. S. 668 (1984), and granted the writ of habeas corpus conditioned on the state appellate court's reopening of respondent's direct appeal of the sufficiency-of-the-evidence claim.

On cross-appeals, the United States Court of Appeals for the Sixth Circuit held that respondent's ineffective-assistance-of-counsel claim served as "cause" to excuse the procedural default of his sufficiency-of-the-evidence claim, whether or not the ineffective-assistance claim itself had been procedurally defaulted. *Carpenter* v. *Mohr,* 163 F. 3d 938 (CA6 1998). In the panel's view, it sufficed that respondent had exhausted the ineffective-assistance claim by presenting it to the state courts in his application to reopen the direct appeal, even though that application might, under Ohio law, have been time barred. Finding in addition prejudice from counsel's failure to raise the sufficiency-of-the-evidence claim on direct appeal, the Sixth Circuit directed the District Court to issue the writ of habeas corpus conditioned upon the state court's according respondent a new culpability hearing. We granted certiorari. 528 U. S. 985 (1999).

## II

Petitioner contends that the Sixth Circuit erred in failing to recognize that a procedurally defaulted ineffective-

assistance-of-counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas petitioner can satisfy the "cause and prejudice" standard with respect to the ineffective-assistance claim itself. We agree.

The procedural default doctrine and its attendant "cause and prejudice" standard are "grounded in concerns of comity and federalism," *Coleman* v. *Thompson*, 501 U. S. 722, 730 (1991), and apply alike whether the default in question occurred at trial, on appeal, or on state collateral attack, *Murray* v. *Carrier*, 477 U. S. 478, 490–492 (1986). "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U. S., at 732. We therefore require a prisoner to demonstrate cause for his state-court default of *any* federal claim, and prejudice therefrom, before the federal habeas court will consider the merits of that claim. *Id.*, at 750. The one exception to that rule, not at issue here, is the circumstance in which the habeas petitioner can demonstrate a sufficient probability that our failure to review his federal claim will result in a fundamental miscarriage of justice. *Ibid.*

Although we have not identified with precision exactly what constitutes "cause" to excuse a procedural default, we have acknowledged that in certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice. *Carrier*, 477 U. S., at 488–489. Not just any deficiency in counsel's performance will do, however; the assistance must have been so ineffective as to violate the Federal Constitution. *Ibid.* In other words, ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim. And we held in *Carrier* that the principles of comity and federalism that underlie our longstanding exhaustion doctrine—then as

now codified in the federal habeas statute, see 28 U. S. C. §§ 2254(b), (c)—require *that* constitutional claim, like others, to be first raised in state court. "[A] claim of ineffective assistance," we said, generally must "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Carrier, supra,* at 489.

The question raised by the present case is whether *Carrier's* exhaustion requirement for claims of ineffective assistance asserted as cause is uniquely immune from the procedural-default rule that accompanies the exhaustion requirement in all other contexts—whether, in other words, it suffices that the ineffective-assistance claim was "presented" to the state courts, even though it was not presented in the manner that state law requires. That is not a hard question. An affirmative answer would render *Carrier's* exhaustion requirement illusory.[3]

We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in *Coleman:* "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state

---

[3] Last Term, in a *per curiam* summary reversal, we clearly expressed the view that a habeas petitioner must satisfy the "cause and prejudice" standard before his procedurally defaulted ineffective-assistance claim will excuse the default of another claim. *Stewart* v. *LaGrand,* 526 U. S. 115, 120 (1999). Respondent contends that we are not bound by *LaGrand* because in that case the habeas petitioner had *waived* his ineffective-assistance claim in the District Court, thereby rendering our procedural default discussion dicta, and because, in any event, *per curiam* opinions decided without the benefit of full briefing or oral argument are of little precedential value. Whether our procedural default analysis in *LaGrand* is properly characterized as dictum or as alternative holding, and whatever the precedential value of a *per curiam* opinion, the ease with which we so recently resolved this identical question reflects the degree to which the proper resolution flows irresistibly from our precedents.

ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501 U. S., at 732. We again considered the interplay between exhaustion and procedural default last Term in *O'Sullivan* v. *Boerckel,* 526 U. S. 838 (1999), concluding that the latter doctrine was necessary to "'protect the integrity' of the federal exhaustion rule." *Id.,* at 848 (quoting *id.,* at 853 (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by "'letting the time run'" so that state remedies were no longer available. *Id.,* at 848. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had *presented* his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a *"fair* 'opportunity to pass upon [his claims].'" *Id.,* at 854 (STEVENS, J., dissenting) (emphasis added) (quoting *Darr* v. *Burford,* 339 U. S. 200, 204 (1950)).

To hold, as we do, that an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted is not to say that that procedural default may not *itself* be excused if the prisoner can satisfy the cause-and-prejudice standard with respect to *that* claim. Indeed, the Sixth Circuit may well conclude on remand that respondent can meet that standard in this case (although we should note that respondent has not argued that he can, preferring instead to argue that he does not have to). Or it may conclude, as did the District Court, that Ohio Rule of Appellate Procedure 26(B) does not constitute an adequate procedural ground to bar federal habeas review of the ineffective-assistance claim. We express no view as to these issues, or on the question

whether respondent's appellate counsel was constitutionally ineffective in not raising the sufficiency-of-the-evidence claim in the first place.

\* \* \*

For the foregoing reasons, the judgment of the Court of Appeals for the Sixth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE BREYER, with whom JUSTICE STEVENS joins, concurring in the judgment.

I believe the Court of Appeals correctly decided the basic question: "Whether a federal habeas court is barred from considering an ineffective-assistance-of-counsel claim as 'cause' for the procedural default of another claim when the ineffective-assistance claim is itself procedurally defaulted." The question's phrasing itself reveals my basic concern. Although the question, like the majority's opinion, is written with clarity, few lawyers, let alone unrepresented state prisoners, will readily understand it. The reason lies in the complexity of this Court's habeas corpus jurisprudence—a complexity that in practice can deny the fundamental constitutional protection that habeas corpus seeks to assure. Today's decision unnecessarily adds to that complexity and cannot be reconciled with our consistent recognition that the determination of "cause" is a matter for the federal habeas judge.

To explain why this is so, and at the risk of oversimplification, I must reiterate certain elementary ground rules. A federal judge may issue a writ of habeas corpus freeing a state prisoner, if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U. S. C. § 2254(a). However, the judge may not issue the writ if an adequate and independent state-law ground justifies the prisoner's detention, regardless of the federal claim.

See *Wainwright* v. *Sykes*, 433 U. S. 72, 81–88 (1977). One "state ground" often asserted as an adequate, independent basis for holding a state prisoner in custody is a state-law "procedural default," such as the prisoner's failure to raise his federal claim at the proper time. However, under certain conditions the State's assertion of such a ground is not "adequate" (and consequently does not bar assertion of the federal-law claim). There are three situations in which an otherwise valid state ground will not bar federal claims: (1) where failure to consider a prisoner's claims will result in a "fundamental miscarriage of justice," *Coleman* v. *Thompson*, 501 U. S. 722, 750 (1991); (2) where the state procedural rule was not "'firmly established and regularly followed,'" *Ford* v. *Georgia*, 498 U. S. 411, 423–424 (1991); *James* v. *Kentucky*, 466 U. S. 341, 348–349 (1984); and (3) where the prisoner had good "cause" for not following the state procedural rule and was "prejudice[d]" by not having done so, *Sykes, supra,* at 87.

Ordinarily, a federal habeas judge, while looking to state law to determine the potential existence of a procedural ground that might bar consideration of the prisoner's federal claim, decides whether such a ground is *adequate* as a matter of federal law. See *Ford, supra; James, supra; Coleman, supra.* Thus the Court has applied federal standards to determine whether there has been a "fundamental miscarriage of justice." See, *e. g., Schlup* v. *Delo*, 513 U. S. 298, 314–317 (1995). And the Court has also looked to state practice to determine the factual circumstances surrounding the application of a state procedural rule, while determining as a matter of federal law whether that rule is "firmly established [and] regularly followed." *Ford, supra,* at 424–425. Federal habeas courts would normally determine whether "cause and prejudice" excuse a "procedural default" in the same manner. *Murray* v. *Carrier*, 477 U. S. 478, 489 (1986) ("[T]he question of cause" is "a question of federal law").

If I could stop here, the rules would be complicated, but still comprehensible. The federal habeas judge would look to state law and state practice to determine the facts and circumstances surrounding a state procedural rule that the State claims is an "adequate and independent state ground." However, the federal judge would determine the adequacy of that "state ground" as a matter of federal law.

Unfortunately, the rules have become even more complex. In *Carrier*, the Court considered a prisoner's contention that he had "cause" for failing to follow a state procedural rule—a rule that would have barred his federal claim. The "cause," in the prisoner's view, was that his lawyer (who had failed to follow the state procedural rule) had performed inadequately. This Court determined, as a matter of federal law, that only a performance so inadequate that it violated the defendant's Sixth Amendment right to effective assistance of counsel could amount to "cause" sufficient to overcome a "procedural default." *Id.*, at 488–489. That being so, the Court reasoned, the prisoner should have to exhaust the ineffectiveness claim in state court. The Court wrote:

> "[I]f a petitioner could raise his ineffective assistance claim for the first time on federal habeas in order to show cause for a procedural default, the federal habeas court would find itself in the anomalous position of adjudicating an unexhausted constitutional claim for which state court review might still be available." *Id.*, at 489.

And today the Court holds not only that the prisoner must exhaust this claim by presenting it to the state courts, but also that his failure to do so properly, *i. e.*, a failure to comply with the State's rules for doing so, bars that prisoner from ever asserting that claim as a "cause" for not having complied with state procedural rules.

The opinion in *Carrier* raises a special kind of "exhaustion" problem. The Court considered a type of "cause" ("in-

effective assistance") for not following the state procedural
rule that happened itself independently to constitute a viola-
tion of the Federal Constitution. After all, were the pris-
oner to prove his claim (*i. e.*, show "ineffective assistance"),
the State might want to take action first. Ordinary exhaus-
tion rules assure States an initial opportunity to pass upon
claims of violation of the Federal Constitution. Why should
a State not have a similar opportunity in this situation? As
the *Carrier* Court pointed out, it would be "anomalous" for
a federal habeas court to "adjudicat[e] an unexhausted con-
stitutional claim for which state court review might still be
available." *Ibid.*

The anomaly disappears, however, once the prisoner has
exhausted his "ineffective-assistance" claim (which appeared
in the guise of a "cause"). And there is no other anomaly
that requires the majority's result. Once a claim of in-
effective assistance of counsel has been exhausted—either
through presentation in the state courts or through proce-
dural default—there is no difference between that claim
and any other claim of "cause" for the prisoner's original
procedural default. The federal habeas court is no longer
in the "anomalous position" of considering as cause an in-
dependent claim that might yet be considered by the state
courts, for there is no longer any possibility that the state
courts will consider the claim. There is thus no more reason
to hold that procedural default of an ineffective-assistance
claim bars the prisoner from raising that ineffective-
assistance claim as a "cause" (excusing a different proce-
dural default asserted as a bar to a basic constitutional claim)
than there is to bar any other claim of "cause" on grounds
of procedural default. The majority creates an anomaly; it
does not cure one.

The added complexity resulting from the Court's opinion is
obvious. Consider a prisoner who wants to assert a federal
constitutional claim (call it FCC). Suppose the State asserts

as a claimed "adequate and independent state ground" the prisoner's failure to raise the matter on his first state-court appeal. Suppose further that the prisoner replies by alleging that he had "cause" for not raising the matter on appeal (call it C). After *Carrier*, if that alleged "cause" (C) consists of the claim "my attorney was constitutionally ineffective," the prisoner must have exhausted C in the state courts first. And after today, if he did not follow state rules for presenting C to the state courts, he will have lost his basic claim, FCC, forever. But, I overstate. According to the opinion of the Court, he will not necessarily have lost FCC forever *if* he had "cause" for not having followed those state rules (*i. e.*, the rules for determining the existence of "cause" for not having followed the state rules governing the basic claim, FCC) (call this "cause" C*). *Ante*, at 453. The prisoner could therefore still obtain relief if he could demonstrate the merits of C*, C, and FCC.

I concede that this system of rules has a certain logic, indeed an attractive power for those who like difficult puzzles. But I believe it must succumb to this question: *Why* should a prisoner, who may well be proceeding *pro se*, lose his basic claim because he runs afoul of state procedural rules governing the presentation to state courts of the "cause" for his not having followed state procedural rules for the presentation of his basic federal claim? And, in particular, *why* should that special default rule apply when the "cause" at issue is an "ineffective-assistance-of-counsel" claim, but not when it is any of the many other "causes" or circumstances that might excuse a failure to comply with state rules? I can find no satisfactory answer to these questions.

I agree with the majority, however, that this case must be returned to the Court of Appeals. Although the prisoner's "ineffective-assistance" claim is not barred, he still *must* prove that the "assistance" he received was "ineffective" (or some other "cause"). And, if he does so, he still must prove his basic claim that his trial violated the Federal Con-

stitution—all before he can secure habeas relief. I would remand for consideration of these matters.

For these reasons, I concur in the judgment.