**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| DAVID MICHAEL GRAVES, | |
| Petitioner-Appellant, | No. 09-16389 |
| v. | D.C. No. 3:01-cv-03502-SI |
| GARY SWARTHOUT, Acting Warden, | MEMORANDUM[*] |
| Respondent-Appellee. | |

Appeal from the United States District Court
for the Northern District of California
Susan Illston, District Judge, Presiding

Argued and Submitted February 17, 2011
San Francisco, California

Before: TASHIMA and SILVERMAN, Circuit Judges, and ADELMAN, District
Judge.[**]

David Michael Graves appeals from a judgment of the district court denying his

two petitions for writs of habeas corpus under 28 U.S.C. § 2254. This court granted

a certificate of appealability on three issues arising out of one of those petitions: (1)

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**]     The Honorable Lynn S. Adelman, District Judge for the United States
District Court for the Eastern District of Wisconsin, sitting by designation.

whether the prosecutor distorted the judicial fact-finding process by denying immunity to defense witness John Hinkley and/or threatening him with prosecution, thereby violating Graves's due process rights; (2) whether the trial court's failure to make an adequate inquiry into Hinkley's invocation of his Fifth Amendment privilege against self-incrimination violated Graves's due process and Sixth Amendment rights; and (3) whether the district court abused its discretion by denying an evidentiary hearing on these claims. We affirm.[1]

## I.

The state courts addressed Graves's claim that the prosecutor should have granted Hinkley immunity on the merits. Therefore, our review is governed by § 2254(d), and we may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Graves's claim that the prosecutor committed misconduct by failing to grant Hinkley immunity is based almost entirely on Ninth Circuit caselaw holding that a

[1]We also decline to expand the certificate of appealability to include the uncertified issue raised in Graves's opening brief.

prosecutor commits misconduct (and deprives the defendant of due process) when he or she refuses to grant a defense witness use immunity with the deliberate intention of distorting the fact-finding process. *See, e.g., Williams v. Woodford*, 384 F.3d 567, 600 (9th Cir. 2004). Under the Ninth Circuit's approach, the defendant must show that "the prosecution intentionally caused a defense witness to invoke the Fifth Amendment right against self-incrimination, or that the prosecution granted immunity to a government witness in order to obtain that witness's testimony, but denied immunity to a defense witness whose testimony would have directly contradicted that of the government witness." *Id.* However, there is no Supreme Court case recognizing this form of prosecutorial misconduct. Although Graves points to Supreme Court cases recognizing that other forms of prosecutorial misconduct can amount to a deprivation of the defendant's right to due process and a fair trial, *see, e.g., Darden v. Wainwright*, 477 U.S. 168 (1986); *Smith v. Phillips*, 455 U.S. 209 (1981); *Brady v. Maryland*, 373 U.S. 83 (1963), the cited cases involve nothing similar to the alleged misconduct that occurred at Graves's trial, and the California courts did not unreasonably fail to extend the rationale of those cases to Graves's case. The state court's refusal to grant relief on this claim was thus not contrary to, and did not involve an unreasonable application of, clearly established Supreme Court law.

Graves also argues that the prosecutor went beyond merely refusing to grant Hinkley immunity and actually threatened him with prosecution if he testified. There is no Supreme Court caselaw holding that a prosecutor commits misconduct when he or she threatens a defense witness with prosecution and thereby causes the witness to either refuse to testify or invoke the Fifth Amendment. However, we will assume for the sake of argument that the state court would have acted unreasonably if it refused to extend *Webb v. Texas*, 409 U.S. 95 (1972), to a case in which the prosecutor made a threat similar to the threat made by the state trial judge in *Webb*. Even so, Graves would not be entitled to habeas relief on this claim because the record presented to the state court, *see* 28 U.S.C. § 2254(d)(2); *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011), does not support Graves's claim that the prosecutor threatened Hinkley.

The record before the state court included Hinkley's 1997 declaration and Gary Mosbarger's 2000 declaration. In his 1997 declaration, Hinkley stated that although he was prepared to testify for Graves, he was informed by his attorney that if he testified he would be charged with the murder of Gary Tutt. Mosbarger, who was present when Hinkley signed the 1997 declaration, said in his declaration that Hinkley said that Hinkley's attorney said that if Hinkley testified the district attorney would charge him with Tutt's murder. However, Hinkley never spoke to the prosecutor, and all he knows is what his attorney, Ken Dothee, told him. And Hinkley did not say in

4

his declaration that Dothee told him that the prosecutor threatened to prosecute him if he testified. Moreover, even if Hinkley meant to say in his declaration that Dothee told him that the prosecutor made a threat, that would be hearsay: Dothee would be the declarant, and Graves would be trying to use the words that Hinkley put into Dothee's mouth in order to prove the truth of the matter asserted—that the prosecutor told Dothee that he would prosecute Hinkley if he testified. Mosbarger's declaration—which simply repeats what Hinkley says in his declaration in slightly different words—just adds an extra layer of hearsay to Hinkley's declaration. This hearsay testimony did not compel the state court to either conclude that the prosecutor threatened Hinkley or hold an evidentiary hearing for the purpose of exploring the matter further. Accordingly, the state court reasonably determined as a factual matter that the prosecutor did not threaten Hinkley.

**II.**

Graves claims that the state courts deprived him of due process and his Sixth Amendment right to compulsory process by failing to make an adequate inquiry into Hinkley's assertion of the Fifth Amendment privilege. We conclude that Graves procedurally defaulted this claim by failing to raise it in the California Supreme Court during his direct appeal or in a timely state habeas petition. *See Walker v. Martin*, __ U.S. __, 131 S. Ct. 1120 (2011). Although Graves argues that the California timeliness rule is not an "adequate" state ground for procedural-default purposes,

5

*Walker* holds that the rule is generally adequate. *Id.* at 1131 ("we find no inadequacy in California's timeliness rule generally or as applied in Martin's case"). Graves argues that this holding applies only to the timeliness rule as it existed in 2002 and later. But even if that is so (and we doubt that it is), the California Supreme Court denied Graves's habeas petition as untimely *in 2005*. SER 30. Although Graves asserts that 2000 is the significant date for his case, we find no support for this assertion in *Walker*. To the extent that the year 2002 had any significance in *Walker*, it was because that was the year in which the California Supreme Court denied Martin's habeas petition as untimely. *See id.* at 1126. The corresponding date in Graves's case is 2005, and so the holding in *Walker* applies here even if that holding would not apply to petitions that were denied as untimely before 2002.

Graves argues that he can show cause and prejudice and that therefore we should set aside his procedural default. In an attempt to show cause, Graves argues that his appellate counsel was ineffective in not raising the trial court's failure to conduct an adequate inquiry into Hinkley's assertion of the privilege in the California Supreme Court during his direct appeal. However, Graves had no right to counsel in the California Supreme Court, *see Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Ross v. Moffit*, 417 U.S. 600, 610 (1974), and so counsel's failure to raise the claim there is not cause for setting aside the default, *see Murray v. Carrier*, 477 U.S. 478, 486–88 (1986). To the extent that Graves is arguing that he received ineffective

6

assistance of counsel in the California Court of Appeal, that claim has itself been defaulted because it was raised in the state habeas petition that the California Supreme Court denied as untimely. *See* SER 20; *Edwards v. Carpenter*, 529 U.S. 446, 450-54 (2000) ("an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted").

Graves also argues that he is actually innocent of Tutt's murder, and that therefore his claim should be heard on the merits in order to avoid a fundamental miscarriage of justice. For a claim of actual innocence to be credible, the petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Graves has none of the above. Hinkley was not a trustworthy eyewitness because he was not at the scene of the crime. In any event, Hinkley's story about Scott Casteel's supposed confession was not so compelling that it is more likely than not that any rational juror that heard it would have found Graves not guilty. *See House v. Bell*, 547 U.S. 518, 537 (2006).

## III.

The remaining certified issue is whether the district court abused its discretion by not holding an evidentiary hearing on the other two certified issues. When § 2254(d) applies to a federal court's review of a state court's decision, the federal court generally cannot consider evidence that was not before the state court when it

7

rendered its decision. *See* 28 U.S.C. § 2254(d)(2); *Cullen*, 131 S. Ct. at 1398. Thus, unless the state court's failure to hold an evidentiary hearing resulted in an unreasonable determination of the facts, the district court could not have held an evidentiary hearing. In the present case, none of the state court's decisions was based on an unreasonable determination of the facts. The only factual issue that is even remotely colorable is whether the prosecutor threatened Hinkley with prosecution if he testified. But, as we discussed, Graves presented the state courts with nothing but Hinkley and Mosbarger's vague hearsay statements on this issue, and we conclude that such evidence was not enough to require the state court to hold an evidentiary hearing. Therefore, the district court did not abuse its discretion.

AFFIRMED.