Justice Scalia,
with whom Justice Thomas joins, dissenting.
I
A
Let me get this straight: Out of concern for the values of federalism; to preserve the ability of our States to provide, prompt justice; and in light of our longstanding jurisprudence holding that there is no constitutional right to counsel in state collateral review; the Court, in what it portrays as an admirable exercise of judicial restraint, abstains from holding that there is a constitutional right to counsel in initial-review state habeas. After all, that would have *19 meant, in a case such as the one before us, that failing to provide assistance of counsel, or providing assistance of counsel that falls below the Strickland standard, would constitute cause for excusing procedural default. See Strickland v. Washington, 466 U. S. 668 (1984). Instead of taking that radical step, the Court holds that, for equitable reasons, in a case such as the one before us, failing to provide assistance of counsel, or providing assistance of counsel that falls below the Strickland standard, constitutes cause for excusing procedural default. The result, of course, is precisely the same.
Ah, but perhaps the explanation of why the Court’s action today amounts to praiseworthy self-restraint is this: It pronounces this excuse from the usual rule of procedural default only in initial-review state habeas raising an ineffective-assistance-of-trial-counsel claim. But it could have limited its invention of a new constitutional right to collateral-review counsel in precisely the same fashion — and with precisely the same consequences. Moreover, no one really believes that the newly announced “equitable” rule will remain limited to ineffective-assistance-of-trial-counsel cases. There is not a dime’s worth of difference in principle between those cases and many other cases in which initial state ha-beas will be the first opportunity for a particular claim to be raised: claims of “newly discovered” prosecutorial misconduct, for example, see Brady v. Maryland, 373 U. S. 83 (1963), claims based on “newly discovered” exculpatory evidence or “newly discovered” impeachment of prosecutorial witnesses, and claims asserting ineffective assistance of appellate counsel. The Court’s soothing assertion, ante, at 17, that its holding “addresses only the constitutional claims presented in this case,” insults the reader’s intelligence.[1]
*20 Moreover, even if today's holding could (against all logic) be restricted to ineffective-assistance-of-trial-counsel claims, it would have essentially the same practical consequences as a holding that collateral-review counsel is constitutionally required. Despite the Court’s suggestion to the contrary, see ante, at 16, the rule it adopts calls into question the common state practice of not appointing counsel in all first collateral proceedings, see ante, at 14-15. It does not, to be sure, call into question the lawfulness of that practice; only its sanity. For if the prisoner goes through state collateral proceedings without counsel, and fails to raise an ineffective-assistance-of-trial-counsel claim which is, because of that failure, defaulted, the default will not preclude federal habeas review of the merits of that claim. And since ineffective assistance of trial counsel is a monotonously standard claim on federal habeas (has a duly convicted defendant ever been effectively represented?), whoever advises the State would himself be guilty of ineffective assistance if he did not counsel the appointment of state-collateral-review counsel in all cases — lest the failure to raise that claim in the state proceedings be excused and the State be propelled into federal habeas review of the adequacy of trial-court representation *21 that occurred many years ago.[2] Which is to say that the Court’s pretended avoidance of requiring States to appoint collateral-review counsel is a sham.[3]
Of course even the appointment of state-collateral-review counsel will not guarantee that the State’s criminal proceeding can be concluded without years-long federal retrial. Appointment of counsel may, as I have said, avoid federal review of the adequacy of representation that occurred years ago, at the original trial. But since, under today’s opinion, the condition for exclusion of federal habeas is the very same condition that would apply if appointment of state-collateral-review counsel were constitutionally required, it will remain to be determined in federal habeas review whether the state-appointed counsel was effective. Thus, as a consequence of today’s decision the States will always be forced to litigate in federal habeas, for all defaulted ineffective-assistance- *22 of-trial-counsel claims (and who knows what other claims), either (1) the validity of the defaulted claim (where collateral-review counsel was not appointed), or (2) the effectiveness of collateral-review counsel (where collateral-review counsel was appointed). The Court notes that many States already provide for the appointment of counsel in first collateral challenges — as though this proves that what the Court forces the States to do today is eminently reasonable. But what the Court fails to point out is that currently, when state-appointed counsel does not raise an ineffective-assistance-of-trial-counsel claim, that is the end of the matter: The issue has been proeedurally defaulted. By virtue of today’s opinion, however, all those cases can (and where capital punishment is at issue assuredly will) proceed to federal habeas on the issue of whether state-appointed counsel was ineffective in failing to raise the ineffective-assistance-of-trial-counsel issue. That is the meaning of the Court’s (supposedly comforting) statement:
“It is likely that most of the attorneys appointed by the courts are qualified to perform, and do perform, according to prevailing professional norms; and, where that is so, the States may enforce a procedural default in federal habeas proceedings.” Ante, at 15 (emphasis added).
To be more precise, the Court should have said “where that is so, and where federal habeas courts have finally rejected claims that it is not so, the States may enforce a procedural default in federal habeas proceedings.”
I cannot possibly imagine the basis for the Court’s confidence, ante, at 15-16, that all this will not put a significant strain on state resources. The principal escape route from federal habeas — existence of an “adequate and independent state ground” — has been closed.[4] Whether counsel ap *23 pointed for state collateral review raises the ineffective-assistance-of-trial-counsel claim or not, federal habeas review will proceed. In practical effect, that may not make much difference in noncapital cases (except for the squandering of state taxpayers’ money): The defendant will stay in prison, continuing to serve his sentence, while federal habeas review grinds on. But in capital cases, it will effectively reduce the sentence, giving the defendant as many more years to live, beyond the lives of the innocent victims whose life he snuffed out, as the process of federal habeas may consume. I guarantee that an assertion of ineffective assistance of trial counsel will be made in all capital cases from this date on, causing (because of today’s holding) execution of the sentence to be deferred until either that claim, or the claim that appointed counsel was ineffective in failing to make that claim, has worked its way through the federal system.
B
The Court would have us believe that today’s holding is no more than a “limited qualification” to Coleman v. Thompson, 501 U. S. 722 (1991). Ante, at 15. It is much more than that: a repudiation of the longstanding principle governing procedural default, which Coleman and other cases consistently applied. Coleman itself involved a habeas petitioner’s contention that his attorney’s failure to file a timely notice of appeal in his state habeas proceeding, which resulted in procedural default of the claims raised in that proceeding, was cause to excuse that default in federal habeas. 501 U. S., at 752. The petitioner in that case contended that whether a violation of his constitutional right to effective *24 counsel had occurred was of no consequence, so long as the attorney's conduct fell short of the effectiveness standard set forth in Strickland. See 501 U. S., at 753. Whereas Coleman flatly repudiated that claim as being inconsistent with our precedent, see ibid., today's majority wholeheartedly embraces it, ante, at 14.
Rejection of the argument in Coleman was compelled by our jurisprudence pertaining to cause for excusing procedural default, and in particular Murray v. Carrier, 477 U. S. 478 (1986). See Coleman, supra, at 752-753. Carrier involved the failure of a defendant's attorney to raise a claim on direct appeal. 477 U. S., at 482. This failure did not constitute cause, we explained, because it was not an “objective factor external to the defense.” Id., at 488 (emphasis added). This external-factor requirement reflects the judgment that States should not be forced to undergo federal habeas review of a defaulted claim unless a factor not attributable to the prisoner obstructed his compliance with state procedures. See id., at 487-488.
Although this externality requirement has been the North Star of our excuse-for-cause jurisprudence, today’s opinion does not whisper its name — no doubt because it is impossible to say that Martinez's procedural default was caused by a factor external to his defense. Coleman and Carrier set forth in clear terms when it is that attorney error constitutes an external factor: Attorney error by itself does not, because when an attorney acts (or fails to act) in furtherance of the litigation, he is acting as the petitioner’s agent. Coleman, supra, at 753; Carrier, supra, at 492. Any other rule would be inconsistent with our system of representative litigation, under which “each párty is deemed bound by the acts of his lawyer-agent.” Irwin v. Department of Veterans Affairs, 498 U. S. 89, 92 (1990) (internal quotation marks omitted). But when attorney error amounts to constitutionally ineffective assistance of counsel, that error is imputed to the State (for the State has failed to comply with the constitu *25 tional requirement to provide effective counsel), rendering the error external to the petitioner. Coleman, supra, at 754; Carrier, supra, at 488. Accordingly, as Martinez himself appears to recognize, see Brief for Petitioner 22, our cases require that absent a determination that Arizona violated the Constitution by failing to provide effective counsel, attorney error cannot provide cause to excuse his procedural default. Rather than apply that rule here, the Court adopts the very approach Coleman explicitly addressed and rejected.
The Court essentially disclaims any need to give full consideration to the principle of stare decisis because Coleman did not involve an initial-review collateral proceeding for a claim of ineffective assistance of trial counsel. See ante, at 15. That is rather like saying that Marbury v. Madison, 1 Cranch 137 (1803), does not establish our authority to review the constitutionality of a new federal statute because it involved a different enactment. Just as the reasoning of Mar-bury was categorical, so was the reasoning of Coleman and Carrier: Attorney error is not an external factor constituting cause for excusing default unless the State has a constitutional obligation to provide effective counsel. Had the majority seriously considered the relevant stare decisis factors, see, e. g., Montejo v. Louisiana, 556 U. S. 778, 792-793 (2009), it would have had difficulty justifying today’s decision. Nor can it escape the demands of stare decisis by saying that our rules regarding the excuse of procedural default reflect an “equitable judgment” that is “elaborated in the exercise of the Court’s discretion.” Ante, at 13. Equity is not lawlessness, and discretion is not license to cast aside established jurisprudence reaffirmed this very Term. See Maples v. Thomas, 565 U. S. 266, 280 (2012) (“Negligence on the part of a prisoner’s postconviction attorney does not qualify as 'cause’” (quoting Coleman, supra, at 753)). “‘[Cjourts of equity must be governed by rules and precedents no less than courts of law;’ ” Lonchar v. Thomas, 517 U. S. 314, 323 *26 (1996) (quoting Missouri v. Jenkins, 516 U. S. 70, 127 (1995) (Thomas, J., concurring)).
Noticeably absent from the Court’s equitable analysis, moreover, is any consideration of the very reason for a procedural-default rule: the comity and respect that federal courts must accord state-court judgments. See Edwards v. Carpenter, 529 U. S. 446, 451 (2000). The procedural-default doctrine reflects the understanding that federal review of defaulted claims may “circumvent the jurisdictional limits of direct review and ‘undermine the State’s interest in enforcing its laws.’ ” Lee v. Kemna, 534 U. S. 362, 388 (2002) (Kennedy, J., dissenting) (quoting Coleman, 501 U. S., at 731). Unlike today’s decision, Carrier and Coleman took account of the significant costs federal habeas review imposes on States, including the “reduction in the finality of litigation and the frustration of ‘both the States’ sovereign power to punish offenders and their good-faith attempts to honor constitutional rights.’” Carrier, supra, at 487 (quoting Engle v. Isaac, 456 U. S. 107, 128 (1982)). Criminal conviction ought to be final before society has forgotten the crime that justifies it. When a case arrives at federal habeas, the state conviction and sentence at issue (never mind the underlying crime) are already a dim memory, on average more than six years old (seven years for capital cases).[5] I would adhere to the precedents that prevent a bad situation from becoming worse.
II
We granted certiorari on, and the parties addressed their arguments to, the following question:
“Whether a defendant in a state criminal ease who is prohibited by state law from raising on direct appeal any claim of ineffective assistance of trial counsel, but who *27 has a state-law right to raise such a claim in a first post-conviction proceeding, has a federal constitutional right to effective assistance of first post-conviction counsel specifically with respect to his ineffective-assistance-of-trial-counsel claim.” Pet. for Cert. i.
While the Court’s decision not to answer the question did not avoid the costs a constitutional holding would have imposed on States, it did avoid the Court’s need to confront the established rule that there is no right to counsel in collateral proceedings. To avoid his procedural default, Martinez advocates in favor of an exception to this rule where the prisoner seeks the right to counsel in an initial-review collateral proceeding — an argument we have previously declined to address. See Coleman, supra, at 755.
The argument is quite clearly foreclosed by our precedent. In Pennsylvania v. Finley, 481 U. S. 551 (1987), and Murray v. Giarratano, 492 U. S. 1 (1989), we stated unequivocally that prisoners do not “have a constitutional right to counsel when mounting collateral attacks upon their convictions.” Finley, supra, at 555. See also Giarratano, 492 U. S., at 10 (plurality opinion) (“[T]he rule of Pennsylvania v. Finley should apply no differently in capital cases than in noncapital cases”); id., at 14 (Kennedy, J., concurring in judgment) (indicating that the Constitution does not categorically require States to provide counsel to death-row inmates seeking state habeas review). Though Finley may have involved only claims that could have been raised on direct review, see 481 U. S., at 553; Giarratano, supra, at 24 (Stevens, J., dissenting), the Court was no doubt aware that States often limit “the collateral review process [to] issues that have not previously been litigated or argued on the direct appeal.” Brief for Respondent in Finley, O. T. 1986, No. 85-2099, p. 11, n. 5. And Giarratano, which involved a class action filed under 42 U. S. C. § 1983, addressed the general assertion that the Constitution requires the appointment of counsel for collateral attacks on capital convictions. See 492 U. S., at 3-4 *28 (plurality opinion). The Court rejected that assertion without qualification. The dissenting opinion, moreover, made the precise argument Martinez now asserts: Under state law “some claims [including ineffective assistance of trial counsel] ordinarily heard on direct review will be relegated to postconviction proceedings.” Id., at 24 (Stevens, J., dissenting). See also Brief for Respondents in Giarratano, O. T. 1988, No. 88-411, p. 29, n. 8 (“In [Virginia capital habeas] proceedings, Death Row inmates seek to assert claims that have not been, and could not have been, addressed on direct appeal . . . ”). Thus, in announcing a categorical rule in Finley, see Giarratano, supra, at 12 (plurality opinion), and then reaffirming it in Giarratano, the Court knew full well that a collateral proceeding may present the first opportunity for a prisoner to raise a constitutional claim. I would follow that rule in this case and reject Martinez’s argument that there is a constitutional right to counsel in initial-review collateral proceedings.
* * *
Far from avoiding the consequences a constitutional holding would have imposed on the States, today’s holding as a practical matter requires States to appoint counsel in initial-review collateral proceedings — and, to boot, eliminates the pre-existing assurance of escaping federal habeas review for claims that appointed counsel fails to present. Despite the Court’s protestations to the contrary, the decision is a radical alteration of our habeas jurisprudence that will impose considerable economic costs on the States and further impair their ability to provide justice in a timely fashion. The balance it strikes between the finality of criminal judgments and the need to provide for review of defaulted claims of ineffective assistance of trial counsel grossly underestimates both the frequency of such claims in federal habeas, and the incentives to argue (since it is a free pass to federal habeas) that appointed counsel was ineffective in failing to raise such *29 claims. The balance might have been close (though it would disregard our established jurisprudence) if the Court merely held that uncounseled failure to raise ineffective assistance of trial counsel would not constitute default. But in adding to that the rule that counseled failure to raise it may also provide an excuse, the Court creates a monstrosity. For these reasons, I respectfully dissent.

 The Court also seeks to restrict its holding to cases in which the State has “deliberately ehofsen]” to move the asserted claim “outside of the direct-appeal process,” ante, at 13. That line lacks any principled basis, and will not last. Is there any relevant difference between cases in which *20 the State says that certain claims can only be brought on collateral review and cases in which those claims by their nature can only be brought on collateral review, since they do not manifest themselves until the appellate process is complete? Our cases establish that to constitute cause for failure to raise an issue on direct review, the excuse must be “an objective factor external to the defense.” See infra, at 24. That the factual basis for a claim was not available until the collateral-review stage is no less such a factor than a State’s requiring that a claim be brought on collateral review. See Murray v. Carrier, 477 U. S. 478, 488 (1986). The Court’s asserted limitation makes sense only if the opinion means that a State has “deliberately eho[sen]” to move newly-arisen claims “outside of the direct-appeal process” if it fails to reopen the direct-appeal process in order to entertain such claims. Such a radical change in what we require of the States surely ought to be prescribed by language clearer than what today’s opinion contains.

 The Court says that to establish cause a prisoner must demonstrate that the ineffective-assistance-of-trial-counsel claim is “substantial,” which apparently means the claim has at least some merit. See ante, at 14. The Court does not explain where this substantiality standard comes from, and how it differs from the normal rule that a prisoner must demonstrate actual prejudice to avoid the enforcement of a procedural default, see Coleman v. Thompson, 501 U. S. 722, 750 (1991). But whatever the standard, examination of the adequacy of years-ago representation has been substituted for summary dismissal by reason of procedural default.

 The Court also claims, ante, at 16, that its “equitable” ruling, unlike a constitutional ruling, will not require “a reversal in all state collateral cases on direct review from state courts” where counsel has not been appointed. Surely the Court does not mean to suggest that an unconstitutional failure to appoint counsel on collateral review, like an unconstitutional failure to appoint counsel at trial, would require the entire conviction to be set aside. That is inconceivable. So either one of two things would happen: Either the reviewing state court would be able to inquire into prejudice (which is an improvement over having the federal habeas court make that inquiry, as the Court’s “equitable” solution requires); or else the appellate state court will remand for a collateral proceeding with counsel (which is, as we have said, just what the Court’s “equitable” ruling effectively requires anyway). So the Court’s “equitable” ruling is no boon to the States.

 See N. King, F. Cheesman, & B. Ostrom, Final Technical Report: Habeas Litigation in U. S. District Courts 45-49 (2007) (documenting the percentage of habeas petitions that included claims, dismissed for various *23 procedural reasons); Administrative Office of the United States Courts, Habeas Corpus Petitions Disposed of Procedurally During the 12-Month Period Ending September 30, 2011 (reporting that for appeals in noncapi-tal state-prisoner habeas eases, procedural default accounted for the largest percentage of procedural dispositions, with the exception of the denial of a certificate of appealability) (available in Clerk of Court’s case file).

 See King, Cheesman, & Ostrom, Final Technical Report, at 21-22 (reporting the average interval between state judgment and federal habeas filing for a sample of federal habeas cases filed in the early-to-mid 2000⅛).