FILED
United States Court of Appeals
Tenth Circuit

January 9, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MICHAEL RAY HARRIS,

Petitioner - Appellant,

v.

JOE ALLBAUGH, Director,

Respondent - Appellee.

No. 18-5046
(D.C. No. 4:15-CV-00141-JHP-FHM)
(N.D. Okla.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]
_____

Before **McHUGH**, **MORITZ**, and **EID**, Circuit Judges.
_____

Michael Ray Harris, a pro se state prisoner, seeks a certificate of appealability

(COA) to challenge a district court order that denied his 28 U.S.C. § 2254 petition for

habeas relief.  Exercising jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), we deny

Harris's application and dismiss this appeal.

## BACKGROUND

One evening in November 2011, A.T. went hitchhiking near her home in Tulsa,

Oklahoma.  She soon accepted a ride from a man in "a green like Ford Explorer Jeep."

_____

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

R., Vol. II at 356.[1]  Instead of driving to her destination, the man drove her to a field near a water treatment facility and raped her.  Afterward, he drove off.  A.T. managed to contact her boyfriend and others, who brought her home and then summoned an ambulance.  She was taken to a hospital, where she underwent a rape exam and provided a description of her attacker and the vehicle he drove.

Police investigated, but they soon "exhausted all [their] leads."  *Id.* at 629.  Consequently, they "inactivate[d] [A.T.'s case]."  *Id.*

Not long thereafter, in January 2012, police arrested Harris on rape charges in another case.  They then began comparing the circumstances in that case to those in some of their inactivated cases, including A.T.'s case, and they found "similar[ities] in the [attacker's] physical description[,] . . . in how the attacker first made contact with the victim, . . . [in] where the attacker took the victim," *id.* at 630-31, and in "the method of the attack[s]," *id.* at 631.  Further, the vehicle used in the attacks was similarly described as "[a] red Jeep and a dark green Jeep."  *Id.*  Police obtained documents indicating that Harris had driven both a red Jeep and a green Jeep.

In February 2012, Detective Liz Eagan interviewed A.T., and showed her a photo lineup of six men, including Harris, as "possibilities."  *Id.* at 383.  A.T. "immediately" could tell that four of the men were not her attacker.  *Id.* at 384.  She ultimately identified Harris, circling his photo and writing that she was "95 percent" sure he was her attacker.  *Id.* at 384.  She was not completely sure, however, because her attacker "was missing

---

[1] In citing the record, we will use the page designations created by this court's CM/ECF system.

2

teeth," and she "couldn't see the side of the guy's mouth" in the photo. *Id.* at 385; *see also id.* at 641-42.

Afterward, Detective Eagan obtained a search warrant to photograph Harris's mouth. The resulting photos showed that Harris was "missing his two front top teeth." *Id.* at 645.

Harris was charged with first-degree rape, with two or more prior felony convictions. His trial was bifurcated into guilt and penalty phases. During the guilt phase, A.T. identified Harris as her attacker, with "[o]ne hundred percent" certainty. *Id.* at 395. Three other women, "H.W., D.C. and S.G.," testified that Harris had sexually assaulted them "within three months of" A.T.'s rape. *Id.*, Vol. I at 32-33. "Each assault bore similarities to the attack on A.T., and each of the three women identified Harris as her attacker." *Id.* at 33. The jury found Harris guilty, and the case proceeded to the penalty phase.

There, based on evidence that Harris had prior felony convictions for sexual assault and aggravated robbery, the prosecutor asked the jury to return a sentence of life without parole. Specifically, the prosecutor urged the jury to consider that A.T. would never be able to forget being raped by Harris. The jury recommended life without parole and the trial court imposed that sentence.

Harris appealed to the Oklahoma Court of Criminal Appeals (OCCA), arguing that (1) the trial court erred by admitting the testimony of Harris's three other victims; (2) the prosecutor committed misconduct during penalty-phase closing arguments; (3) defense counsel rendered ineffective assistance by not objecting to the testimony from the other

3

victims, not contesting A.T.'s photo lineup and in-court identifications, and not objecting to the prosecutor's penalty-phase arguments; and (4) insufficient evidence supported his conviction. The OCCA affirmed.

Harris then sought federal habeas relief. Unsuccessful, he now requests a COA to appeal.

## DISCUSSION
## I. Standards of Review

The issuance of a COA is a jurisdictional prerequisite to an appeal from the denial of a § 2254 habeas petition. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To obtain a COA, Harris must make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), such "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). And where the district court has denied a habeas claim on procedural grounds, Harris must show not only the denial of a constitutional right, but also "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In determining whether to issue a COA, we must incorporate the deference for state court decisions required by the Antiterrorism and Effective Death Penalty Act (AEDPA). *See Davis v. McCollum*, 798 F.3d 1317, 1319 (10th Cir. 2015). Under AEDPA, a federal court may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law,

4

as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).

Finally, we construe Harris's pro se filings liberally. *See Hall v. Scott*, 292 F.3d 1264, 1266 (10th Cir. 2002).

## II. Propensity Evidence

On direct appeal, Harris argued that the trial court erred by admitting the testimonies of H.W., D.C., and S.G. without balancing the probative value of the evidence against its prejudicial effect, in violation of Oklahoma law and federal due-process law. The OCCA reviewed Harris's argument for plain error because he had not objected at trial, and it found no error at all:

> Whether [Harris] was in fact the man who raped A.T. was perhaps the most important factual issue at trial, and there were clearly significant similarities between the rape of A.T. and the rapes of the other three victims. . . .
> . . . The [trial] court was conscientious and issued proper instructions concerning the propensity evidence to limit its prejudicial impact. The evidence was offered generally to provide a link to the identity of A.T.'s attacker rather than as distinctive or signature evidence. The evidence was undoubtedly relevant and the purpose for introducing the evidence was proper.

R., Vol. I at 35-36 (footnote omitted). The district court concluded that the OCCA did not unreasonably apply federal due-process law.

Initially, we point out that "federal habeas review is not available to correct state law evidentiary errors. . . . [A habeas petitioner] is entitled to relief only if an alleged state-law error was so grossly prejudicial that it fatally infected the trial and denied the

5

fundamental fairness that is the essence of due process." *Hooks v. Workman*, 689 F.3d 1148, 1180 (10th Cir. 2012) (brackets and internal quotation marks omitted).  Thus, we proceed to the due-process component of Harris's evidentiary claim.

As the OCCA pointed out, testimony from H.W., D.C., and S.G. was necessary to provide a link to the identity of A.T.'s attacker and the evidence was confined by proper instructions.  Thus, the evidence was not grossly prejudicial.  The district court found no unreasonable application of federal law, and Harris offers no cogent argument as to the debatability of that determination.

### III.  Prosecutorial Misconduct

On direct appeal, Harris claimed that during penalty-phase closing arguments, the prosecutor "inappropriately appealed for a verdict and punishment based on sympathy" by asking the jury to consider the rape's ongoing effect on A.T.  R., Vol. I at 218.  The OCCA reviewed Harris's claim for plain error, given the lack of an objection, and it found no error.  Specifically, the OCCA framed the claim as whether Harris was denied a fair and reliable sentencing, and then concluded he was not, because the prosecutor's comments were acceptable.

In the federal habeas proceedings, Harris repeated that claim and sought to add that the prosecutor submitted evidence in the penalty phase that confused the issues and did not support a crime.  The district court first found that Harris's new claims were procedurally barred.  Then, the district court found it was not unreasonable for the OCCA to reject Harris's sympathy argument, given that the prosecutor's comments "spoke to a

6

topic within the realm of common knowledge and did not render [Harris's] trial fundamentally unfair." *Id.* at 396.

Harris has not demonstrated that a COA is warranted. In regard to the prosecutor's comment that the rape would continue to affect A.T., that comment neither "infringe[s] o[n] a specific constitutional right," *Underwood v. Royal*, 894 F.3d 1154, 1167 (10th Cir. 2018) (internal quotation marks omitted), nor rises to a level of "egregious[ness] that . . . renders [Harris's sentencing] fundamentally unfair" in violation of due process, *Cummings v. Evans*, 161 F.3d 610, 618 (10th Cir. 1998). Indeed, it was clear from A.T.'s own testimony, incorporated into the penalty phase from the guilt phase, that the rape was continuing to affect her. *See* R., Vol. II at 395-96 (A.T.'s testimony that she was "[o]ne hundred percent" confident in her identification of Harris because "[t]here is a connection that doesn't ever go away[,]" and "[i]t's a bond you don't ever want to have with somebody").

As for Harris's misconduct claims that were not exhausted in the OCCA, the district court aptly noted that the resulting procedural bar could be overcome only by a showing of cause and prejudice or a fundamental miscarriage of justice. *See Frost v. Pryor*, 749 F.3d 1212, 1231 (10th Cir. 2014) (observing that an anticipatory procedural bar arises against unexhausted claims "that would be procedurally barred under state law if the petitioner returned to state court to exhaust [them]," and that a federal court may consider such claims only "if the prisoner has alleged sufficient cause for failing to raise the claim and resulting prejudice," or "if denying review would result in a fundamental miscarriage of justice because the petitioner has made a credible showing of actual

7

innocence" (internal quotation marks omitted)).  Although Harris sought to overcome the bar by claiming that he received ineffective assistance of appellate counsel and that he is innocent, the district court's rejection of those grounds is not debatable.

First, in order for ineffective appellate assistance to overcome a procedural bar, such a claim must itself be exhausted, *see Edwards v. Carpenter*, 529 U.S. 446, 453 (2000), and here, it was not.  Second, Harris failed to make "a credible showing of actual innocence," *Frost*, 749 F.3d 1231-32, by relying on documents indicating:  (1) he possessed blue and red Jeeps, whereas A.T. described a green Jeep; and (2) he was excluded as a DNA contributor in a sexual-assault case not involving any of the four women who identified him in this case.  These documents do not show actual innocence. *See id.* at 1232 (stating that the petitioner's "new evidence must be sufficient to show that it is more likely than not that no reasonable juror would have convicted [him]" (internal quotation marks omitted)).  Specifically, the four women victims in this case similarly described Harris's Jeep as either red or green, and the prosecutor introduced evidence connecting Harris to Jeeps of both colors.  And most significantly, A.T. confidently identified Harris as her attacker, both in the photo lineup and at trial, and the three other victims bolstered A.T.'s identification.

## IV.  Ineffective Assistance of Trial Counsel

On direct appeal, Harris argued that trial counsel was ineffective by (1) not objecting to prosecutorial misconduct and the admission of testimony from H.W., D.C., and S.G.; and (2) not arguing that the photo lineup was so "impermissibly suggestive" as to require the exclusion of A.T's pre-trial and in-court identifications of Harris as her

8

attacker. R., Vol. I at 220-21. The OCCA rejected the first component of Harris's ineffectiveness claim on the ground that it had found no prosecutorial misconduct and no error in the admission of testimony. As to the second component of ineffectiveness, the OCCA again focused on the merits of the underlying claim. Specifically, it reviewed the photo lineup and found it was not impermissibly suggestive because "[t]he men depicted each have many of the characteristics fitting the description provided by A.T." *Id.* at 40. And even if it was impermissibly suggestive, the OCCA stated, the photo lineup did not taint A.T.'s in-court identification, which the OCCA found "reliable under the totality of the circumstances." *Id.* Accordingly, the OCCA rejected Harris's ineffective-assistance claims, citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (explaining that for a claim of ineffective assistance to succeed, "the defendant must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense").

In his federal habeas petition, Harris repeated these claims and attempted to advance new claims concerning defense counsel's investigation and presentation of evidence. The district court confined its habeas review to the ineffective-assistance claims presented to the OCCA. That decision is not debatable for the same reasons we identified above regarding Harris's attempt to advance unexhausted prosecutorial-misconduct arguments.

Turning to Harris's exhausted claims, the district court determined that the OCCA did not unreasonably apply *Strickland* insofar as defense counsel failed to object to the prosecutor's penalty-phase statement and the admission of testimony from H.W., D.C., and S.G. This determination is not debatable. *See Cannon v. Mullin*, 383 F.3d 1152,

9

1162 (10th Cir. 2004) (finding no deficient performance in defense counsel's failure to object when there was "no meritorious state-law objection available").

As for defense counsel's failure to challenge A.T.'s identifications of Harris, the district court's rejection of that claim is also not debatable. Specifically, the OCCA concluded that the photo lineup was not impermissibly suggestive, given the shared physical characteristics of the possible suspects.[2] Harris has not demonstrated that the OCCA's conclusion resulted from an unreasonable application of federal law or an unreasonable determination of the facts. Thus, without a basis for defense counsel to object, it was not unreasonable for the OCCA to reject Harris's ineffective-assistance claim. Further, the OCCA determined that if the photo lineup was impermissibly suggestive and required a defense objection, Harris suffered no prejudice because A.T.'s in-court identification was independently reliable. In assessing that reliability, the OCCA applied the factors from *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977) (identifying factors to be considered when determining whether an in-court identification was tainted by a pre-trial confrontation: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation"). Specifically, the OCCA referenced "A.T.'s opportunity to observe her attacker, the degree of her attention, the accuracy of her prior

---

[2] In analyzing this issue, the OCCA applied the correct Supreme Court precedent. *See Simmons v. United States*, 390 U.S. 377, 383 (1968) (indicating that the suggestive nature of a photo lineup "must be evaluated in light of the totality of surrounding circumstances").

10

identification and her certainty." R., Vol. I at 40. Harris has not demonstrated that the OCCA either unreasonably applied *Manson* or unreasonably determined the facts governing the reliability of A.T.'s in-court identification. Thus, it was not unreasonable for the OCCA to conclude that Harris was not prejudiced by defense counsel's failure to contest A.T.'s in-court identification as tainted by the photo lineup. *See Harrington v. Richter*, 562 U.S. 86, 111 (2011) ("In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently," but rather, "whether it is reasonably likely the result would have been different." (internal quotation marks and citations omitted)).

## V. Sufficiency of the Evidence

In response to Harris's claim that there was insufficient evidence to convict him, the OCCA concluded that "any rational trier of fact could have found beyond a reasonable doubt that Harris committed first degree rape based on the evidence presented." R., Vol. I at 41-42. The federal district court determined that Harris "ha[d] failed to make the requisite showings under § 2254(d) to obtain habeas relief on this claim." *Id.* at 402.

Given the strength of the prosecution's case against Harris, the district court's determination is not debatable. *See Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (explaining that insufficient-evidence claims "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference[:]" (1) "A reviewing [state] court may set aside the jury's verdict on the ground of insufficient

11

evidence only if no rational trier of fact could have agreed with the jury[;]" and (2) "a federal [habeas] court may not overturn a state court decision rejecting a sufficiency of the evidence challenge . . . [unless] the state court decision was objectively unreasonable" (internal quotation marks omitted)).

## CONCLUSION

We dismiss this appeal.

Entered for the Court


Allison H. Eid
Circuit Judge