**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**October 21, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

_____

RAY ROGER JORDAN,

    Petitioner - Appellant,

v.

STEVEN HARPE, Director,

    Respondent - Appellee.

No. 24-6090
(D.C. No. 5:21-CV-00701-G)
(W.D. Okla.)

_____

### ORDER DENYING CERTIFICATE OF APPEALABILITY[*]
_____

Before **BACHARACH**, **McHUGH**, and **FEDERICO**, Circuit Judges.
_____

Ray Roger Jordan, proceeding pro se,[1] seeks a certificate of appealability ("COA")

regarding his conviction for first-degree murder. After the Oklahoma Court of Criminal

Appeals ("OCCA") twice denied him relief, Mr. Jordan filed a petition for a writ of

habeas corpus under 28 U.S.C. § 2254. The district court denied the habeas petition and

declined to issue a COA. Mr. Jordan now asks this court to issue a COA to review the

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

[1] "Because [Mr. Jordan] is pro se, we liberally construe his filings, but we will not act as his advocate." *James v. Wadas*, 724 F.3d 1312, 1315 (10th Cir. 2013).

district court's decision. We deny Mr. Jordan's application for a COA and dismiss this matter.

## I.    BACKGROUND

### A.    *Factual Background*

At trial, a jury convicted Mr. Jordan for murdering Drew Gibson, a man involved in a romantic relationship with Mr. Jordan's wife, Megan Briggs. On December 20, 2015, one week after Ms. Briggs left Mr. Jordan for Mr. Gibson, Mr. Jordan learned they were going to the home of their drug supplier, Brandon Grimland. Mr. Jordan decided to go to Mr. Grimland's house to confront the couple, and he asked his housemate, Aaron Masterson, to go with him as backup. Mr. Masterson agreed and rode with Mr. Jordan to Mr. Grimland's house. Once they arrived, Mr. Masterson drove Mr. Jordan's car to a nearby convenience store, so Ms. Briggs and Mr. Gibson (who had not yet arrived) would not know Mr. Jordan was there. Mr. Jordan and Mr. Masterson then waited in the backyard, at Mr. Grimland's instructions, until Ms. Briggs and Mr. Gibson arrived. While they were waiting, Mr. Masterson observed Mr. Jordan holding a black semiautomatic gun.

When Ms. Briggs and Mr. Gibson arrived, they accompanied Mr. Grimland into his den. Mr. Grimland left them in the den, walked outside, and told Mr. Jordan they were inside. At that point, Mr. Jordan ran into the house, still holding the gun, and tackled Mr. Gibson on sight. While the two men struggled, Mr. Jordan fired the gun, hitting Mr. Gibson in the chest. Mr. Gibson died soon after.

On December 22, 2015, the State charged Mr. Jordan with first-degree (malice aforethought) murder in Oklahoma district court. A jury convicted him following a five-day trial. Subsequently, in a bifurcated proceeding, Mr. Jordan was sentenced to life imprisonment with the possibility of parole.

### B.    Procedural History

### 1.    State Court Proceedings

On direct appeal, Mr. Jordan advanced two arguments: (1) the trial court erred by bifurcating the trial and (2) his trial counsel provided ineffective assistance by stipulating to the admission of Mr. Jordan's prior criminal convictions. The OCCA rejected both arguments, finding the guilt phase of trial was properly bifurcated from the sentencing phase and that "[t]rial counsel was not ineffective." ROA at 99.

Mr. Jordan next filed a pro se motion for post-conviction relief ("PCR Motion") in the Oklahoma trial court, presenting five grounds for reversal. In Ground One, Mr. Jordan argued his appellate counsel was ineffective by not arguing on direct appeal that trial counsel provided ineffective assistance by (a) failing to impeach witnesses who had made prior inconsistent statements, (b) failing to call expert witnesses to rebut the State's experts, and (c) failing to adequately rebut the State's case.

In Mr. Jordan's other four grounds for reversal, he argued (2) insufficiency of evidence; (3) the trial court should have evaluated whether contact with the victim's mother, who briefly sat in the jury box, unduly influenced the jury; (4) the trial court erred by setting a "time limit" for the entire trial; and (5) all errors cumulatively deprived Mr. Jordan of a fair trial. *Id.* at 121. Mr. Jordan did not argue, however, that his appellate

counsel should have raised Grounds Two through Five on direct appeal. Rather, his PCR Motion set forth the Ground One ineffective-assistance argument in a separate section and did not mention his appellate counsel anywhere in Grounds Two through Five.

The trial court denied the PCR Motion, finding Mr. Jordan had "not establish[ed] the substantive elements of a claim of ineffectiveness of appellate counsel" for Ground One and that Grounds Two through Five were "procedurally barred" because those claims should "have been raised on direct appeal." *Id.* at 166. Mr. Jordan appealed to the OCCA, which also found he had not established ineffective assistance of appellate counsel in Ground One. The OCCA agreed that Grounds Two through Five "either were, or could have been, presented on direct appeal" and thus would "not be considered" at the post-conviction-relief stage. *Id.* at 169 (citing *Fox v. Oklahoma*, 880 P.2d 383, 384 (Okla. Crim. App. 1994)).

### 2.    Federal Court Proceedings

Mr. Jordan next filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the U.S. District Court for the Western District of Oklahoma. In his habeas petition, Mr. Jordan repeated the same five grounds for reversal from his PCR Motion. However, Mr. Jordan attempted to extend his ineffective-assistance argument to Grounds Two through Five, arguing that every ground discussed in the PCR Motion "should have been raised on direct appeal" by his appellate counsel. *Id.* at 12. The district court referred the habeas case to a magistrate judge, who entered a thirty-page Report and Recommendation ("R&R"), recommending that the district court deny the petition.

4

In the R&R, the magistrate judge examined the three instances of ineffective assistance that Mr. Jordan identified in Ground One and concluded that trial counsel was not ineffective in those instances. Thus, by extension, Mr. Jordan's appellate counsel did not provide deficient representation by choosing not to argue that trial counsel was ineffective. The magistrate judge refused to consider whether appellate counsel was ineffective for not raising Mr. Jordan's other four grounds on direct appeal, finding this claim was unexhausted and an anticipatory procedural bar precluded federal review. Last, the magistrate judge found Mr. Jordan had waived Grounds Two through Five under Oklahoma law when he did not raise them on direct appeal, and that this "independent and adequate state procedural rule" precluded federal review of these grounds. *Id.* at 330.

The district court, after conducting a de novo review in light of Mr. Jordan's Objection to the R&R, adopted the R&R in its entirety. Regarding Ground One, the district court agreed that Mr. Jordan had not shown his appellate counsel provided ineffective assistance, as Mr. Jordan had identified no situations in which trial counsel's performance fell below an acceptable standard. The district court further agreed that Mr. Jordan "cannot reasonably be said to have raised to the trial court an ineffective-assistance claim based upon the omission of Grounds Two through Five" on direct appeal, and thus this claim was unexhausted and subject to an anticipatory procedural bar. *Id.* at 344–46. The district court also found that, by not raising Grounds Two through Five on direct appeal, Mr. Jordan had procedurally defaulted those grounds and was precluded from obtaining federal habeas review.

5

Additionally, the district court declined to grant a COA, finding that "jurists of reason would [not] find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would [not] find it debatable whether the district court was correct in its procedural ruling." *Id.* at 348 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). The district court later denied Mr. Jordan's subsequently filed motion to alter or amend the dismissal order, as well as Mr. Jordan's motion to proceed in forma pauperis on appeal.

## II.    DISCUSSION

### A.    *Legal Standards*

The court of appeals may hear an appeal from "the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court" only if "a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). For a circuit judge to issue a COA, the petitioner must have "made a substantial showing of the denial of a constitutional right" by the district court. *Id.* § 2253(c)(2). When a "district court has rejected the constitutional claims on the merits, the showing required" for a COA "is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. But when a district court denies a habeas petition based on a procedural bar, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

6

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a state court has adjudicated a federal claim on the merits, federal courts can grant habeas relief only if the petitioner establishes the state court decision (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). Under this deferential standard, a federal court may grant habeas relief only when the state court decision is "objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409 (2000)).

Furthermore, federal courts may not grant habeas relief "on behalf of a person in custody pursuant to" a state court decision unless the petitioner "has exhausted the remedies available in" state court. 28 U.S.C. § 2254(b)(1)(A). Claims are exhausted once the petitioner has fairly presented them to the state's highest court, either on direct appeal or in a post-conviction motion. *See Fairchild v. Workman*, 579 F.3d 1134, 1151–52 (10th Cir. 2009). "Fair presentation of a prisoner's claim to the state courts means that the substance of the claim [was] raised there." *Patton v. Mullin*, 425 F.3d 788, 809 n.7 (10th Cir. 2005) (quotation marks omitted). The "petitioner bears the burden of demonstrating that he has exhausted his available state remedies." *McCormick v. Kline*, 572 F.3d 841, 851 (10th Cir. 2009) (quotation marks omitted).

If a federal court determines a petitioner's claims are unexhausted, it typically must dismiss the unexhausted claims without prejudice so the petitioner can exhaust those claims in state court. *See Bland v. Sirmons*, 459 F.3d 999, 1012 (10th Cir. 2006).

But remanding to state court is inappropriate if the petitioner's claims would be subject to an anticipatory procedural bar. *See id.* An anticipatory procedural bar exists when "an unexhausted claim . . . would be procedurally barred under state law if the petitioner returned to state court to exhaust it." *Moore v. Schoeman*, 288 F.3d 1231, 1233 n.3 (10th Cir. 2002). When a federal court applies an anticipatory procedural bar to a habeas petitioner's claims, those claims generally are procedurally defaulted and thus ineligible for federal habeas review. *See Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

### B.    Ground One: Ineffective Assistance of Appellate Counsel

Reasonable jurists could not find debatable the district court's conclusion that Mr. Jordan has not established ineffective assistance of appellate counsel. To state a habeas claim for ineffective assistance of counsel under the Sixth Amendment, a petitioner must "must show that his attorney's performance was deficient and that he was prejudiced by that deficiency." *Horsey v. Rankins*, No. 23-6083, 2023 WL 6459462, at *5 (10th Cir. Oct. 4, 2023) (unpublished) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).[2] When evaluating a claim of ineffective assistance of appellate counsel, we first "look to the merits of the omitted issue, and [i]f the omitted issue is without merit, counsel's failure to raise it does not constitute constitutionally ineffective assistance of counsel." *Id.* (alteration in original) (quoting *Hooks v. Ward*, 184 F.3d 1206, 1221 (10th Cir. 1999)).

---

[2] We cite unpublished decisions for their persuasive value only and do not treat them as binding precedent. 10th Cir. R. 32.1(A).

Mr. Jordan argues his appellate counsel neglected to argue on direct appeal that trial counsel failed to (a) impeach State witnesses who had made prior inconsistent statements; (b) call expert witnesses to rebut the State's experts; and (c) engage in "meaningful adversarial testing" of the State's case. Appellant's Br. at 10.

First, Mr. Jordan argues "that the [police] statements of each and every witness" who witnessed the murder were inconsistent with those witnesses' testimony at trial, and that trial counsel "never made any attempt to impeach [their] testimony with the previous statements." ROA at 11; *see* Appellant's Br. at 9–10. But the only witness Mr. Jordan specifically identifies as providing inconsistent testimony is Mr. Masterson. And as the magistrate judge explained, Mr. Jordan's argument that trial counsel did not impeach Mr. Masterson is "belied by the trial transcript." ROA at 313–15. Indeed, "both the prosecutor and defense counsel addressed the disparity between the content of the statement Mr. Masterson made to the detective and his testimony at trial." *Id.* at 314. Mr. Jordan points to nothing in the record contradicting the magistrate judge's analysis; nor did he make such arguments in his Objection to the R&R. Given Mr. Jordan's failure to substantiate this argument, reasonable jurists would not debate whether Mr. Jordan's trial counsel adequately impeached Mr. Masterson with his inconsistent police statement.

Second, Mr. Jordan argues that "trial counsel made no attempt to call *any* witnesses, expert or otherwise, and also did not attempt to move for State funds . . . to be used to secure expert witnesses for the defense," and that this alleged failure to obtain competing experts constitutes ineffective representation. *Id.* at 11–12; Appellant's Br. at 10. But Mr. Jordan has not explained *which* specific experts his trial counsel allegedly

9

should have located, nor how the absence of expert testimony was prejudicial to his case. As the magistrate judge found, this argument is "no more than speculation that unidentified experts" might have "provide[d] testimony generally rebutting the prosecution's experts." ROA at 317. Accordingly, it is beyond debate that Mr. Jordan has not established an ineffective-assistance claim arising from trial counsel's failure to obtain expert witnesses.

Third, Mr. Jordan argues that trial counsel "failed to present meaningful adversarial testing which would have developed the record to show that [no] element of premeditation ever existed."[3] Appellant's Br. at 10; *see also* ROA at 12 (arguing trial counsel only "ask[ed] some cursory questions to the [S]tate's witnesses"). The magistrate judge found this argument was "without merit," because trial counsel presented a defense theory to the jury, attempted to undermine the State's evidence in closing, cross-examined the State's witnesses, and impeached the State's witnesses whenever possible. ROA at 318–21. Mr. Jordan offers no reason to diverge from the magistrate judge's analysis, nor did he make such arguments in his Objection. It is thus beyond debate that Mr. Jordan has not shown his trial counsel inadequately tested the State's case.

---

[3] Mr. Jordan specifically argues that trial counsel should have elicited testimony from the medical examiner showing he was holding the gun in his nondominant hand, to demonstrate that he did not intend to fire the gun. Mr. Jordan did not, however, raise this factual argument before the district court or the Oklahoma courts. Absent any indication that Mr. Jordan was unable to make this argument previously, we will not consider it for the first time here. *See, e.g.*, *United States v. Romero-Gallardo*, 113 F. App'x 351, 354 (10th Cir. 2004).

In total, Mr. Jordan has not shown that appellate counsel debatably provided constitutionally inadequate representation by failing to directly appeal these three alleged instances of inadequate assistance of counsel. We therefore decline to issue a COA on his ineffective-assistance-of-appellate-counsel claims.[4]

### C.    *Grounds Two Through Five*

Next, reasonable jurists could not find debatable whether the district court should have reviewed Grounds Two through Five. When Mr. Jordan raised these grounds in his PCR Motion, the Oklahoma district court and the OCCA did not review them because Mr. Jordan had waived them by failing to raise them on direct appeal. In turn, the district court found the OCCA's application of the waiver rule was "an independent and adequate state procedural rule" resulting in the procedural default of Grounds Two though Five. ROA at 347 (quoting *Finlayson v. Utah*, 6 F.4th 1235, 1238 (10th Cir. 2021); *see also Coleman*, 501 U.S. at 750.

---

[4] Mr. Jordan also appears to argue that the Oklahoma courts erred by not conducting an evidentiary hearing for his PCR Motion. The district court addressed this argument in its order denying the motion to alter or amend, finding Mr. Jordan had not "raise[d] this evidentiary-hearing basis of error previously" and that such arguments could not be raised post-judgment absent "newly discovered" evidence or a change in law. ROA at 383–84 (quoting *Banister v. Davis*, 590 U.S. 504, 508 n.2 (2020)). The district court further noted that Mr. Jordan had not plausibly explained how the alleged deprivation of an evidentiary hearing was prejudicial. Mr. Jordan does not respond to the district court's analysis. We thus conclude there is no reasonable debate that the district court erred on this issue. *See Banister*, 590 U.S. at 508 ("[C]ourts will not address new arguments or evidence that the moving party could have raised before the decision issued.").

This conclusion cannot be reasonably debated—it is well settled that federal courts may not review "a habeas claim when the state court declined to consider the merits of that claim based on independent and adequate state procedural grounds." *Davis v. Sharp*, 943 F.3d 1290, 1297 (10th Cir. 2019) (quotation marks omitted) (finding Oklahoma's waiver rule to be an independent and adequate state procedural ground). When a petitioner's habeas claims are procedurally defaulted, a federal court may review them only if (1) the petitioner has alleged sufficient "cause" for failing to raise the claim and demonstrated "actual prejudice," or (2) denying review would create "a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Mr. Jordan argues he has good cause for this procedural default because his appellate counsel provided constitutionally inadequate assistance by neglecting to raise Grounds Two through Five on direct appeal. And indeed, Mr. Jordan's "ineffective-appellate-counsel claims could serve as cause to excuse the default." *Danylchuk v. Dowling*, 803 F. App'x 194, 197 (10th Cir. 2020). However, "'ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim' that must be separately 'presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" *Id.* (quoting *Edwards v. Carpenter*, 529 U.S. 446, 451–52 (2000)).

Mr. Jordan did not clearly argue in his PCR Motion that his appellate counsel was ineffective for not raising Grounds Two through Five on direct appeal. Rather, he argued in Ground One of the PCR Motion that appellate counsel's performance was deficient in the three specific ways addressed above. Then he discussed Grounds Two through Five in

12

separate sections, never asserting within those sections that appellate counsel provided ineffective assistance by not raising Grounds Two through Five on direct appeal. Mr. Jordan thus did not fairly present an argument for ineffective assistance of appellate counsel based on Grounds Two through Five to the Oklahoma trial court. Although he "raised the underlying substantive claims to the OCCA on post conviction review, the OCCA refused to consider them, and in any event, the underlying claims could not exhaust his analytically distinct claims alleging ineffective assistance of appellate counsel for failing to raise the underlying claims." *Id.* at 197–98 (collecting cases). Under AEDPA's deferential standard of review, we cannot say that the OCCA was "objectively unreasonable" for refusing to construe Mr. Jordan's ineffective-assistance argument in Ground One as encompassing his substantive arguments in Grounds Two through Five. *Williams*, 529 U.S. at 409; *see also Ryder ex rel. Ryder v. Warrior*, 810 F.3d 724, 746 (10th Cir. 2016) ("When a state court analyzes appellate counsel ineffectiveness as an excuse for procedural default, we must afford AEDPA deference to that analysis.").

Mr. Jordan thus has not established cause for his procedural default. Nor is there any indication that applying a procedural bar to Grounds Two through Five would result in a miscarriage of justice. *See McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) (stating a petitioner may establish a "fundamental miscarriage of justice" by making a "credible showing of actual innocence"). And as the district court found, it would be futile to remand the case back to the Oklahoma courts to consider these unexhausted ineffective-assistance claims because the state courts will find such claims procedurally barred, because they were not raised in Mr. Jordan's PCR Motion. *See Coleman*, 501 U.S.

13

at 735 n.1. Accordingly, an anticipatory procedural bar precludes further review of Mr. Jordan's habeas claims. *See, e.g.*, *Andrew v. White*, 62 F.4th 1299, 1350 (10th Cir. 2023).

In sum, the district court's application of a procedural bar to Grounds Two through Five is not reasonably debatable. The district court therefore correctly denied Mr. Jordan a COA as to these grounds.

## III. CONCLUSION

We DENY Mr. Jordan's application for a COA and DISMISS this matter.

Entered for the Court

Carolyn B. McHugh
Circuit Judge